[Crim. No. 4332.   Second Dist., Div. Three.   May 19, 1949.]

THE PEOPLE, Respondent, v. FLOYD E. RAZE, Appellant.

Max Solomon and John J. Bradley for Appellant.

Fred N. Howser, Attorney General, and Kent C. Rogers, Deputy Attorney General, for Respondent.

VALLÉE, J.—Appellant was convicted of a violation of Penal Code, section 337a, subdivision 3, which provides that every person who, whether for gain, hire, reward, or gratuitously, or otherwise, receives, holds, or forwards, or purports or pretends to receive, hold, or forward, in any manner whatsoever, any money, or consideration of value, or the equivalent thereof, bet or wagered, or to be bet or wagered, or offered for the purpose of being bet or wagered, upon the result, or purported result, of any contest, or purported contest, of skill, speed or power of endurance between horses is guilty of a public offense. He appeals from the judgment and from the sentence imposed. ■ As no appeal lies from the sentence, that appeal is dismissed. (*People* v. *Tallman,* 27 Cal.2d 209, 215 [163 P.2d 857].)

On August 10, 1948, a police officer in civilian clothes entered the premises at 2800 North Figueroa Street, Los Angeles, which is a poolroom and bar. The following conversation occurred between the officer and appellant: Officer: ''You were lucky not to have been taken with Bill.'' Appellant: ''Yes, those dumb cops missed the best ones, Roy and I. I hid a bunch of markers under my shirt.'' Officer: ''Well, give me two to win and two to show on 'Bill Bartlem' in the 8th at Del Mar.'' Appellant: ''Okay.'' Appellant immediately went to the phone and the officer heard him phone that bet in. Appellant then said to the officer: ''I know you had 'Mine', a winner, in the 5th, because I heard you give it to Roy. So you have money coming. And I'll put this bet under cash sales and you can collect tomorrow from Roy. Okay?'' Officer: ''Okay.''

The officer went to the premises on August 11, 1948, at 3:30 p.m. and saw appellant. He testified: ''This defendant was in this poolroom shortly after 3:30, a few minutes after, when I gave the first defendant, Mr. Cardno, a $2.00 show bet on 'Lady Lassitor' in the 4th at Del Mar. And defendant Cardno

gave me change from the $5.00 marked bill, which I had given the defendant. And a few minutes after that, approximately a short time, well, Officer Colbern and two other officers entered. Q. You did not make any bet with the defendant on the 11th, is that right? A. No. I didn't."

On cross-examination the officer testified: "Q. In other words, it has been your testimony you made wagers with all three of these men? A. Yes. Q. Were the three of them ever present at one time at any of your visits there? A. I believe on the first day, the 8th, at about 4:00 o'clock in the afternoon this defendant just came to work, and the first defendant, Mr. Cardno, was just leaving work, and the manager, Roy, were all three there on that one time. On most of the occasions there were just two of them there. Q. On most occasions two of them were there together? A. Later bets, this defendant was there by himself"; that on the occasions he was on the premises there were other people there, approximately 12, either playing pool or sitting at the bar; "Q. Did you, besides this one man you described in one of the accidents when you were there, hear anybody ask for a wager on a horse? Did you hear anybody else make a wager? A. On the 9th there was a man seated beside me, made a wager, but I didn't hear the horse he asked for. Q. In other words, on all those occasions you were there you never did see, with the exception of this one person, you never did see anybody make a bet in there, did you? A. I didn't hear a specific horse named. I saw money pass. Q. Between whom did you see money pass? A. Between a very small individual who had a horse,—they evidently phoned in the wrong horse,—he had a $5.00 win bet on a horse that paid thirty-seven fifty, and he wasn't paid off because they had phoned in a different horse. And there was quite an uproar about it. That was on the 9th. Shortly before this Mr. Cardno was arrested. Q. However, you did not see any activity take place there other than what you have indicated, these two people, you did not see any wagers taken there, did you, besides yours? A. I saw money pass hands. . . . Q. Were your wagers, these wagers you were talking about, ever written down on anything? A. No. Immediately after a wager was made, either one of the three defendants went to the phone and phoned it in. I never saw anything written down. . . . Q. Officer, on these occasions when you saw money exchange hands, did you ever see the telephone used? A. Yes, sir. Immediately after some unknown man in there would hand one of the defendants bills, this person who took the money would

immediately go to the phone and I didn't hear the conversation, so I can't say. Q. Approximately how many times did you see that occur? A. The first defendant, Mr. Cardno, I saw him go at least six times. Q. Let us just confine it to this defendant. A. This defendant, I saw him go three on the date I made my wager with him.''

It was stipulated that a horse named ''Bill Bartlem'' was running at some track in the United States on August 10, 1948, and that the expression ''$2.00 to win and $2.00 to show'' indicated a wager.

The case was tried on the transcript of the preliminary. Appellant did not take the stand. The foregoing constitutes all of the evidence. Appellant did not object to the reception of any evidence.

Appellant claims that (1) the corpus delicti must be proved by evidence other than the extrajudicial declarations of appellant, and (2) there is no evidence of the corpus delicti other than the extrajudicial statements of appellant.

■ Proof of the corpus delicti (that the specific offense charged has actually been committed by somebody) should be made prior to the presentation of evidence of admissions or confessions. The pronouncement found in some of the cases that the corpus delicti cannot be established by the extrajudicial statements and declarations of the accused is not an accurate statement of the rule. The rule is limited to admissions and confessions. (8 Cal.Jur. § 248, p. 167.) Where the gist or essence of the offense charged consists of statements or declarations of the accused,—that is, where statements or declarations of the accused are essential in order to establish that the specific offense charged was committed,—such statements and declarations are admissible as proof of the corpus delicti. There are many criminal offenses predicated upon fraud, such as false pretenses by fraudulent representations (now called theft in this state, Pen. Code, § 484) in which the corpus delicti obviously cannot be established without proof of statements or declarations of the accused.

■ Proof of the corpus delicti in the case at bar was established upon evidence that somebody ''gratuitously, or otherwise'' received, or purported or pretended to receive or hold, ''in any manner whatsoever,'' any money or consideration of value or the equivalent thereof to be bet or wagered, or offered for the purpose of being bet or wagered, upon the result or purported result of a horse race. The evidence as to what oc-

curred on August 10, 1948, established not only the corpus delicti but also appellant's connection with the offense. Appellant accepted a wager of $2.00 to win and $2.00 to show on "Bill Bartlem" a horse running in the 8th race at Del Mar on August 10, 1948. That he did not receive cash is of no consequence. He pretended and purported to receive the equivalent of money, a profit which the officer had made on another race which was held by his associate who was taking wagers on the same premises. The court was warranted in inferring that appellant and his two associates were acting in concert operating a bookmaking establishment and that money held by appellant's associate was held by appellant. Statements made by appellant to the officer were admissible as proof of the corpus delicti. The corpus delicti was established. The conviction of appellant was not a miscarriage of justice.

Judgment affirmed.

Shinn, P. J., and Wood, J., concurred.