[Crim. No. 4383.   Second Dist., Div. Two.   Nov. 2, 1949.]

THE PEOPLE, Respondent, v. JOHN W. HOFFMAN, Appellant.

William Herbert Hall for Appellant.

Fred N. Howser, Attorney General, and Stanford D. Herlick, Deputy Attorney General, for Respondent.

WILSON, J.—Defendant was charged with having received a wager on a horse race (bookmaking) in violation of subdivision 3 of section 337a* of the Penal Code. He pleaded not guilty. A jury trial having been waived he was tried by the court and found guilty as charged. His motion for a new trial was denied, proceedings were suspended and he was placed on probation for three years, six months to be spent in jail. His notice of appeal recites that he appeals ''from the orders, judgment, and sentence of the Court pronounced and entered against him.'' Since there was no judgment or sentence the purported appeals therefrom will be dismissed and we shall consider his appeal as being from the order denying a new trial.

Defendant contends that the corpus delicti was not proved and that the evidence is insufficient to support the conviction. Police Officer Barnes testified that he entered a pool hall and shortly thereafter saw defendant enter and converse with an unknown man who was looking at a scratch sheet. When the conversation ended the man gave defendant some folded currency which he placed in his pocket. The officer witnessed three or four other such transactions. He then followed defendant to a gasoline station where the latter used a pay telephone. Barnes returned to the pool hall and occupied a seat at the lunch counter next to another unknown man. Defendant returned and the unknown man left his seat and extracted a scratch sheet from beneath a beer case; after examining the scratch sheet he approached defendant who was standing directly in front of the witness; the latter heard the man say, ''Give me two to win on Bomber Knight,''

---

*Section 337a: ''Every person, . . .

''3. Who . . . receives, holds, . . . or purports or pretends to receive, hold . . . any money . . . bet or wagered, or to be . . . bet or wagered, or offered for the purpose of being . . . bet or wagered, upon the result, purported result, of any trial, or purported trial, or contest, or purported contest, of . . . speed . . . between . . . beasts, . . .

''Is punishable by imprisonment . . .''

and at the same time handed defendant two one-dollar bills. Defendant nodded his head, placed the bills in his pocket and left the premises. Shortly thereafter the officer went to defendant's home where he, with two other police officers, found defendant, another man and three women. A search of the premises disclosed three scratch sheets on the dining room table, 18 scratch sheets elsewhere in the house covering the period from January 13 to January 24, 1949. At the pool hall the officer found three scratch sheets known as "National Scratch Sheets" under the same beer case from which the unknown bettor had taken his scratch sheet, all dated January 25, the date on which the above described events took place. A "Reporter's Scratch Sheet" was found behind the lunch counter in the pool hall. An examination of the scratch sheets disclosed that a horse named Bomber Knight was listed in the sixth race at Santa Anita Race Track on January 25. The scratch sheets found in defendant's home contained notations on races, prices and scratches for the various races listed therein.

The officer had had three years' experience in investigating bookmaking activities in Los Angeles County. A slip of paper recovered from a box in the dining room of defendant's home was identified by the officer as a type of paper commonly called an "owe sheet" used in recording horserace transactions. At the top of the sheet were the words "win" and "lose." The paper contained the names of several people but no names of horses. The officer testified that in his opinion, based on his experience, the paper is the type used to record the winnings and losses of horse-race bettors.

Defendant was arrested and on the trip to the police station Officer Barnes, in the presence of two other officers, asked defendant why he did not quit bookmaking. Defendant replied, "I guess I will have to. I know where the beef came from, my party line." There was a telephone in the house where the arrest took place and defendant admitted that he lived at that address.

Defendant was the only witness called in his own behalf. He did not deny any of the evidence given by Officer Barnes. Only one question was asked him, which with his answer is: "Q. Do you recall an unknown man coming up to you and saying, give me two dollars to win on Bomber Knight? A. No, sir, I don't."

The foregoing evidence establishes the corpus delicti and is

ample to sustain the conviction—in fact no conclusion or inference can be drawn other than that defendant received money wagered on the result or purported result of a horse race in violation of subdivision 3 of section 337a of the Penal Code. The receipt of currency by defendant from several persons who had scratch sheets in their hands, one of whom indicated he desired to bet on a named horse, the telephone calls, the fact that the scratch sheet for the current date showed that such horse was listed to run at a race track on the same day, the presence of scratch sheets and the "owe sheet" in defendant's residence, his response to the officer's question, all together unmistakably establish that defendant was engaged in the business of bookmaking.

The code section does not require that racing paraphernalia be found in the possession of one charged with the crime of bookmaking or that such person's handwriting appear on a racing form, scratch sheet or owe sheet. The only requirement is that he receive money (*People* v. *Aggie,* 37 Cal.App. 2d 110, 112-113 [98 P.2d 806]) as a wager on a race or a purported race, and it is not necessary to prove that the race was actually run. (Pen. Code, § 337a, subd. 3; *People* v. *Vertlieb,* 22 Cal.2d 193, 196 [137 P.2d 437]; *People* v. *Carroll,* 54 Cal.App. 684, 686 [202 P. 885].) Defendant did not deny he had received the money but merely testified he did not "recall" that the money was handed to him. Other cases in which convictions were sustained on evidence no stronger than that in the instant case are *People* v. *Newman,* 56 Cal.App.2d 394 [132 P.2d 539], *People* v. *Bateman,* 57 Cal.App.2d 585 [135 P.2d 192], *People* v. *Taylor,* 40 Cal.App.2d 324 [104 P.2d 846], *People* v. *Pertak,* 91 Cal.App.2d 801 [205 P.2d 1084], *People* v. *Raze,* 91 Cal.App.2d 918 [205 P.2d 1062].

Defendant relies for a reversal on *People* v. *Banks,* 39 Cal. App.2d 164 [102 P.2d 818]. That case is inapplicable in that (1) the evidence was conflicting, the police officer who made the arrest having been contradicted by the evidence of the defendant and two other witnesses,—in the instant case the police officer's evidence is uncontradicted; (2) the appellate court weighed the evidence and decided in accordance with the testimony of witnesses who were not believed by the trial court and contrary to the evidence that the court had accepted as true; (3) in ruling on the motion for a new trial in the Banks case the trial judge acted on personal knowledge acquired by him outside the court.

■ The only other assignment of error, quoting defendant's language, is that "The court erred in taking judicial notice of bookmakers signs and writings," citing *People* v. *Hinkle*, 64 Cal.App. 375 [221 P. 693], where (p. 379) the court, in holding that two officers were qualified by experience to give expert testimony as to the nature of the hidden meaning of documents taken from the defendant's possession, stated "Neither the judge nor the jury could properly speculate upon what was the peculiar significance to be given to the cabalistic letters and figures which appeared on the papers taken from appellant, or what meaning they would convey to the minds of men instructed in the bookmakers' school." In the instant case the court did not take judicial notice of signs or characters on papers found in defendant's possession since there were none. During the argument after the evidence had closed the court stated it would take judicial notice that bookmakers do not now do so much writing as formerly. Such statement was not objectionable since (1) the evidence was ample to prove the corpus delicti and to sustain the conviction without the presence of any writing made by defendant. (2) There is no conflict in the evidence. (3) Since the Hinkle case the reports have been full of decisions involving the conviction of bookmakers in which the methods adopted to conceal their activities are set forth. Through the opinions in such cases courts have acquired knowledge of the means adopted by bookmakers in attempting to cover up their unlawful commerce and are in a position to take judicial notice of many matters which were required to be proved meticulously in the earlier years of such prosecutions. (4) The remark was not prejudicial since there was no jury and the judge himself was the only person who could have been influenced. (5) The statement was not made for the purpose of substituting judicial notice for oral or documentary evidence but was made during the argument after the evidence had been closed.

The order denying defendant's motion for a new trial is affirmed. The purported appeals from the judgment and sentence are dismissed.

Moore, P. J., and McComb, J., concurred.