[Crim. No. 4514.   Second Dist., Div. Three.   Nov. 9, 1950.]

THE PEOPLE, Respondent, v. FRANK CHAVEZ, Appellant.

Joseph T. Forno for Appellant.

Fred N. Howser, Attorney General, and Doris H. Maier, Deputy Attorney General, for Respondent.

WOOD (Parker), J.—Defendant was accused of violating section 337a, subdivision 3, of the Penal Code in that he did unlawfully receive and hold money wagered upon the result of a horse race.   Trial by jury was waived.   He was convicted, and he appeals from the ''Conviction'' and from the ''denial'' of his motion for a new trial.   He contends that the corpus delicti was not established, and that the evidence is insufficient to support the conviction.

A police officer testified that he entered a cocktail bar in San Pedro on October 26, 1949, about 3:45 p. m., and sat at the bar; about 10 minutes thereafter, the defendant entered the bar and sat at the bar about three seats from the officer; the bar or counter has ''a small turn in it'' with five or six chairs ''in the one turn'' and about 20 chairs on the long side; the officer sat on the long side of the bar about two seats

from the turn, and the defendant sat on the short side of the bar just past the turn; the officer was "to the defendant's right" or "more to the defendant's front"; approximately a minute after the defendant sat down another man (unidentified) came into the bar and sat next to the defendant—between defendant and the officer; then another man (unidentified) came in, went to defendant, leaned over his shoulder and said: "I would like to make a bet on a horse"; the defendant then said, "Okey"; when the man leaned over defendant's shoulder, the defendant was reading a scratch sheet, dated October 26, 1949, which was "open" on the bar in front of him, and on that sheet there were some pencil notations; after defendant said "Okey," the man who had leaned over defendant's shoulder said something to the defendant that the officer did not hear, and then the man handed two $1.00 bills to the defendant; the defendant held the two bills in his left hand; shortly after the defendant had received the $2.00, the officer saw defendant write on a small pad which was on top of the scratch sheet; then the officer placed his badge on the scratch sheet and arrested defendant; the officer took the scratch sheet and pad; the following writing was upon the pad: "BJ-85-B"; the defendant had another scratch sheet, dated October 26, 1949, in his pocket; the man who handed the money to defendant had just left the bar when defendant was arrested.

Another police officer testified that he had made many investigations of bookmakers, had become familiar with books and papers commonly used by them, and had testified several times as an expert on bookmaking matters; that in his opinion the writing "BJ-85-B," appearing upon the pad, indicates as follows: "BJ" indicates the bettor's initials,—"85" indicates the eighth race and the fifth horse,—"B" indicates Bay Meadows racetrack; that according to the scratch sheet, dated October 26, 1949 (which was on the bar), the Bay Meadows track was running horses on that date, there was an eighth race listed at that track, and there was a fifth horse which had the name Holly Son; in his opinion the characters "BJ-85-B" mean a wager on Holly Son, a horse running in the eighth race at Bay Meadows, for a person known as "BJ"; where no amount is set out on a betting marker, the marker is commonly used as a two dollar wager. He testified further that the pencil notations upon the scratch sheet (which was on the bar) indicate the winning horses and mutuel

prices paid at Bay Meadows through the fifth race, and all the winning horses at the other various racetracks throughout the United States, the mutuel prices paid in some instances at those tracks, and that the race at all the other tracks had been completed; that it is a common practice of bookmakers to mark scratch sheets in this manner at the end of the various races. On cross-examination he said that the "85" could mean the eighth horse in the fifth race, but usually the number of the race is given first; that if it meant the eighth horse in the fifth race (referring to Bay Meadows) the name of the horse was Black Alibi and that race had been run (at the time of the arrest) and "the number 8 horse had previously been scratched by drawing a line through it."

Defendant testified that he was a licensed ticket broker and trainer of prize fighters; he was in said bar at the time referred to by the officer; he sat at the bar; a man, whom defendant did not know, was sitting to the right of defendant; a scratch sheet was on the counter, but it was not in front of defendant—it was in front of the man to his right; that sheet did not belong to defendant and he did not make any mark on it; he did not recall seeing the pad before the preliminary hearing; the writing "BJ-85-B," on the pad, is not his handwriting; the scratch sheet, which the officer took from defendant's pocket, belonged to defendant and he had made notations on it to indicate the horses that he liked and played that day; a man by the name of Gus Collins, who owed defendant $4.65 for tickets, came to defendant in the bar and handed $2.00 to him to pay for tickets; defendant did not have any conversation with Collins about the races; Collins did not say "I would like to bet a horse," or say anything like that; at the police station defendant said to the officer, "Give me a break"; the officers took an exemplar of his handwriting. On cross-examination he said he was not a licensed ticket broker in October at the time of his arrest, and that he did not get such a license until December; he did not have an appointment with the man who paid the $2.00, but he (defendant) was at that bar most of the time and people know where he is; he was following the races on the day he was arrested, and at 3:45 p. m. of said day he knew that all the eastern races had been run and that all the races at Bay Meadows except a few had been run; when the officer put his badge on the counter he put it on the small pad which was then on top of the scratch sheet.

Appellant was also accused of violating section 337a, sub-

division 2, of the Penal Code in that on said October 26th he did unlawfully keep and occupy a room with a book and papers for the purpose of recording bets on horse races. He was adjudged not guilty of said charge.

The substance of section 337a, subdivision 3, of the Penal Code, insofar as material here, is as follows: Every person who "whether for gain . . . or gratuitously . . . receives, holds, or forwards, or purports . . . to receive, hold, or forward, in any manner whatsoever, any money . . . bet or wagered, or to be . . . bet or wagered, or offered for the purpose of being . . . bet or wagered, upon the result, or purported result, of any . . . contest, or purported contest, of . . . speed or power of endurance of . . . beast, or between . . . beasts . . .;" is punishable by imprisonment. Said section 337a also provides that it "shall apply not only to persons who may commit any of the acts designated . . . as a business or occupation, but shall also apply to every person . . . who may do in a single instance any one of the acts specified. . . ."

Appellant argues that the evidence does not show that the money was bet on the outcome of a horse race; that the evidence shows "merely a purported conversation wherein one person *proposes* to *bet* on a horse and the other person gives his assent"; that there was no "delineation" in the conversation as to any particular horse, race, money, or result. Although the conversation between the appellant and the second unidentified man, as related by the officer, did not include the name of a horse or a racetrack, the trial judge could infer from that conversation, from the payment of the $2.00, and from the presence of the marked scratch sheet and the pad in front of appellant that appellant received and held the money as a wager on a horse race. "The words 'bet' and 'wager' as used in section 337a of the Penal Code do not require the kind of agreement contemplated by the law of contracts under which there must be an actual meeting of the minds of the contracting parties in order to form an agreement." (*People* v. *Ohio,* 82 Cal.App. 28, 34 [255 P. 205].) In *People* v. *Woods,* 35 Cal.2d 504 [218 P.2d 981], it was said, at page 509, a ". . . violation of subdivision 3 of section 337a, is committed when money is received as a wager on a race." In *People* v. *Hoffman,* 94 Cal.App.2d 379 [210 P.2d 885], which was a prosecution under said subdivision 3 of section 337a, it was said at page 382: "The code section does

not require that racing paraphernalia be found in the possession of one charged with the crime of bookmaking or that such person's handwriting appear on a racing form, scratch sheet or owe sheet. The only requirement is that he receive money [citing case] as a wager on a race or a purported race, and it is not necessary to prove that the race was actually run.'' The facts in the Hoffman case and in the present case are similar. In that case the officer saw the defendant in a pool hall conversing with a man who was looking at a scratch sheet and saw the man hand defendant some currency; and after seeing three such transactions and seeing the defendant use the telephone, the officer heard the man say to defendant, ''Give me two to win on 'Bomber Knight','' and he saw the man hand $2.00 to defendant; scratch sheets bearing the date of the arrest and recent dates were found at the pool hall and at defendant's home; an examination of a scratch sheet found at the pool hall disclosed that a horse named ''Bomber Knight'' was listed in a race at Santa Anita racetrack on the day of the arrest. In that case neither the word ''horse'' nor the word ''race'' was mentioned in the conversation which the officer heard, but statements on a scratch sheet indicated that, by use of the name ''Bomber Knight'' in the conversation, the defendant therein was indirectly referring to a horse. In the present case the name of a horse was not mentioned in the conversation which the officer heard, but the man made the direct statement to appellant that he wanted to bet on a horse. It was not essential herein, in order to prove a violation of said subdivision 3, that the conversation regarding the bet should include the name of a horse or the name of a race track. The appellant had been following the races on the day of his arrest and, at the time he received the money, he knew that all the eastern races had been run and that there were three races yet to be run at Bay Meadows. The trial court could have inferred that there was a race or purported race to be run on that day. After the unidentified man had handed the money to appellant and had had further conversation with him, which was not heard by the officer, the man went away. As above indicated, it is clear that the appellant received the money as a wager on a horse race. The court could have inferred that the man and appellant had made a complete agreement, regarding the man's wager on a horse race, which agreement was understood at least insofar as they themselves were concerned. The statement, ''Give me a break,'' which

was made by appellant to the officer, indicated consciousness of guilt.

The evidence establishes the corpus delicti and is sufficient to support the judgment of conviction.

The judgment and the order denying the motion for a new trial are affirmed.

Shinn, P. J., and Vallée, J., concurred.