No. 2,315.

THE PEOPLE OF THE STATE OF CALIFORNIA, RESPONDENT, v. WM. DENNIS, APPELLANT.

| 39 | 625 |
| 78 | 94 |
| 78 | 334 |
| 39 | 625 |
| 100 | 481 |
| 39 | 625 |
| 105 | 494 |
| 39 | 625 |
| 115 | 159 |
| 115 | 264 |
| 39 | 625 |
| 117 | 83 |
| 39 | 625 |
| 132 | 331 |
| 39 | 625 |
| 135 | 498 |
| 39 | 625 |
| 139 | 162 |

CRIMINAL PRACTICE. — OBJECTION TO EVIDENCE. — Where a question, the answer to which could not prejudice the defendant, or one to which no answer is given, is objected to by defendant, and improperly admitted by the Court, the error is immaterial.

IDEM. — CROSS-EXAMINATION. — The prosecution is entitled to cross-examine a defendant respecting an occurrence about which he had testified in chief: First— For the purpose of showing express malice; and Second—In order to lay a foundation to impeach his credibility.

IDEM. — Where the evidence in chief on the part of the prosecution is confined to acts and declarations occurring at the time of the homicide, and the defendant introduces evidence tending to show a hostile and vindictive feeling and threats on the part of deceased against the defendant for a long period anterior thereto, the prosecution may, for the purpose of proving express malice, rebut such evidence by showing a similar state of feeling and threats on the part of defendant toward the deceased.

IDEM. — INSTRUCTIONS TO JURY.—The defendant is not prejudiced by instructions, some portions of which, taken by themselves, may be objectionable, but as subsequently qualified, embrace a correct exposition of the law upon the points presented.

IDEM. — PLEA OF INSANITY. — Where the defense of insanity is set up, an instruction, given for the purpose of impressing upon the jury the importance of special care and circumspection in considering the evidence tending to establish the insanity of a defendant at the time of the commission of the offense charged, is proper.

IDEM. — IMPROPER CONDUCT OF JUROR. — Where a juror, during the progress of the trial, has manifested an inclination to talk about the case, such impropriety on the part of the juror is not a sufficient ground for setting aside the verdict, if it appear conclusively that the defendant was not affected prejudicially thereby.

APPEAL from the District Court of the Fifth District, San Joaquin County.

The defendant was convicted of murder in the second degree, and moved for a new trial, one of the grounds for which was misconduct of one of the jurors. The motion was denied by the Court, and defendant appealed.

The other facts are stated in the opinion.

S. A. Booker, J. H. Budd, W. L. Dudley and L. T. Carr, for Appellant.

First—The Court erred in overruling the objection of defendant to the following question: "When you rose up

from the stove and started out, where were you going, and for what purpose?"

This question was wholly immaterial, and could have no other effect than to distract the attention of the jury from the real issues in the case.

*Second*—The Court erred in overruling the objection of the defendant to the following question, asked the witness, Dennis, by the District Attorney: "If, just after Judge Belt left, you did not say to Mr. Hampton, there goes the d——d son of a b——h now?"

This question was entirely immaterial. It could not have been for the purpose of contradicting anything the witness, Dennis, had sworn to on his direct examination. There was no pretense that the feelings of defendant for years previous to the homicide had been friendly to Belt, and the only effect of the testimony and object of the question was to create a prejudice in the minds of the jury against the defendant.

The law, that words of reproach, no matter how grievous, is no justification for an assault, is too well established to need any citation of authorities in its support.

*Third*—The Court erred in overruling the objection of defendant to the questions asked the witness, Grattan, on cross-examination by the District Attorney:

"Don't you recollect that I said to you, he was only mad because he had been taken out of the water works building and moved around to the new jail?"

"Did I not say to you at that time that Dennis was pretty mad because he was locked up, and that he would cool off in a day or two and it would then be all right; that the Sheriff in the old water works had treated him very leniently, but it became necessary to lock him up because the new jail was not finished?"

On the direct examination the witness, Grattan, had testified to no conversation between himself and the District Attorney, and the statement made by the prosecuting attorney to the witness not in the presence of Dennis, scarcely comes up to the dignity of hearsay evidence, and was wholly inadmissible. (1 Greenl. Ev. Sec. 124.)

*Fourth*—The District Attorney offered evidence in support of the indictment, including the testimony of a witness, William Woods, who testified in behalf of the people, among other things, that: "I asked him (Dennis) who shot him (Belt). Dennis said, I did ; I am the man that done it; I have given him what I promised him?"

After the District Attorney had rested his case, and defendant had introduced testimony and rested, the Court, against the objection of defendant, allowed the prosecution to call several witnesses for the purpose of proving threats and express malice on the part of the defendant against the deceased, Belt.

It is true that the Court may, for *good reasons*, and in furtherance of justice, permit the people to offer evidence upon their original cause. (Crim. Prac. Act, Sec. 362, Div. 4th.) This is not a matter of absolute discretion with the Court, but may be for good reasons. But the prosecution gave no reason in this case, whatever, for putting in evidence by piecemeal. The prosecution had given evidence of express malice before resting their case, and no rule is better established than that "he who has the affirmative ought to introduce all the evidence to make out his side of the issue, then the evidence of the. negative side is heard, and finally the rebutting proof of the affirmative, and that neither side ought to be permitted to give evidence by piecemeal. (2 Phil. on Ev. Cow. & Hill's Notes, 500 to p. 268.)

This rule is adhered to with the greatest strictness in criminal cases. (*Rex* v. *Stimpson*, 2 Carr & Payne, 415.)

*Fifth*—The Court erred in admitting as evidence, and in refusing to strike out, the following testimony of the witness, Dorsey, as to what Dennis said about Belt in 1865: That "he (Dennis) said here is a bill of items that the d——d scoundrel has furnished a d——d turkey buzzard." And in admitting as evidence, and refusing to strike out, the following testimony of same witness: "That Belt said Dennis was saying more than a man ought to take from him, and more than he ought to take, and Dennis knew why he did take it. This was not in the hearing of Dennis. Belt said .

the d——d old coward would not dare to say what he had but for what he had promised; that he had promised Dennis' daughter and his own wife not to notice anything Dennis would say, and to avoid all difficulties with him as far as possible."

What Dennis said about Belt did not amount to a threat; they were simply words of reproach, calculated to prejudice the jury against defendant; and what Belt said about Dennis was not simply an expression of mental feeling, but was a narration or statement by Belt, and should have been excluded as hearsay. (*Bacon* v. *Charlton*, 7 Cush. 581, 586.)

Further, the feeling of Belt toward Dennis in 1865 was immaterial; the homicide of Belt was four years after that date.

The Court further erred in overruling the objection of defendant to the question asked the witness, Bost: "State what abusive language you have heard him use against Belt;" and in overruling defendant's objection to the question asked same witness: " What have you heard Belt say in reference to Dennis?"

The witness, Bost, had previously testified that he had heard no threats but the one he had already testified to; and the statements of Belt were inadmissible because hearsay.

*Sixth*—The Court erred in overruling the motion of defendant to strike out the following testimony of the witness, Blair: That "I have heard Belt say frequently that he never would hurt Dennis unless he was obliged to ; Belt has uniformly declared, without exception, on the occasion of these conversations, that he never would hurt Dennis unless he was obliged to do so in self-defense."

The Court further erred in overruling defendant's objection to the question asked the same witness: " State what reason he (Belt) gave, if any." And in refusing to strike out the following answer of said witness to that question : " One reason assigned (by Belt) was, that he was under obligation to Dennis ; and the further reason that he had promised a member of Dennis' family that he never would hurt Dennis,"

The statements made by Belt to the witness, Blair, were

made several years before the homicide, and were clearly inadmissible as being hearsay and immaterial.

*Seventh*—The Court erred in overruling defendant's objection to the following testimony of the witness, Hampton, given on behalf of the people. He (Belt) said : "I will not hurt a hair on his (Dennis') head; if he commences abusing me, I'll pass him in silence and contempt."

This statement of Belt was not made in the presence of Dennis, nor ever communicated to him. It is clearly hearsay, and should have been excluded by the Court from the consideration of the jury.

*Eighth*—The Court should not have overruled the objection of defendant to the following question asked the witness, England (a witness called by the people), on direct examination by the District Attorney : "State if defendant, on that occasion and in connection with speaking, that a man owed him money, and if he did not pay it he would put his light out."

And the further question : "Will you swear that he did not use these words?"

And the Court further erred by asking, in that connection, the same witness, the question : "Have you told Mr. Pillsbury (the District Attorney), before this, what you knew about the case?"

The witness, England, was called by the people as a witness, and although the District Attorney, by permission of the Court, might have asked leading questions, still, he had no right to disparage his own witness in the way attempted. (*Commonwealth* v. *Welch*, 4 Gray, 535, 537 ; *Sanchez* v. *The People*, 22 N. Y. 147.)

*Ninth*—The Court erred in giving, at the request of the people, the following instruction to the jury : "When one with a loaded pistol takes deliberate aim and shoots another, it is held to be murder in the first degree."

The Court gave this instruction without qualification; yet a person may, with a loaded pistol, take deliberate aim and shoot another in self-defense—and a part of the defense in this action is that Dennis so shot Belt in self-defense.

Further, the instruction as given, ignores all question of

the mental capacity of the person committing the homicide. An insane man may kill in the manner indicated in the instruction, and not be guilty of murder.

*Tenth*—The Court erred in its instruction to the jury in regard to the plea of insanity, and also in instructing the jury, in the same connection, that: "When no more than the homicide is proved, however horrible in itself, the acts cannot be admitted as a presumption of insanity."

If the people had offered to prove, as a fact, that insanity "is a plea sometimes resorted to in cases when aggravated crimes have been committed," etc., the defendant could have objected to the evidence as immaterial and incompetent in this action. So far from the Court having the right to state to the jury facts not in evidence, the Court has not the right to charge juries with respect to matters of fact when in evidence. (*People* v. *Yberra,* 17 Cal. 166.)

*Eleventh*—The Court erred in refusing to give to the jury instructions asked by defendant, and numbered 9 and 10.

These instructions, asked by defendant, were intended to be based on Sections 29, 30 and 31 of the "Act concerning crimes and punishments," passed April 16, 1850, and on the well known principles that words do not amount to and cannot justify an assault.

*Twelfth*—The juror, Russim, was guilty of such gross misconduct during the progress of the trial that the defendant was entitled to a new trial on that ground of itself.

Under the provisions of our Criminal Practice Act (Sec. 393), the jurors may, in the discretion of the Court, after they are sworn, and before the submission to them of the cause, be allowed to separate, but under the admonition of the Court that it is their duty not to converse among themselves, or with any one else, on any subject connected with the trial, or to form any opinion thereon, until the cause is finally submitted to them. (Cr. Pr. Act, Sec. 394.)

*Jo Hamilton,* Attorney General, for Respondents:

*First*—By appellant's own showing, the questions asked the witness, Jackson, as to where the parties were going when deceased was killed, did not and could not affect, in

any manner, the decision of the case. At any rate, it did not, and could not, have prejudiced the defendant. The question was right and proper, as part of the *res gesta.* It was at the moment of the fatal shot just preceding the death of Belt. The parties were in Jackson's store, not anticipating Dennis' presence, in the peaceful and lawful exercise and prosecution of business. They rose up from there to go to another place. As they passed out of the door, the shot was fired by defendant. The question as to where these parties were going was proper to go to the jury, to show and explain to the jury:

1st. That they were not going anywhere, to do anything to the danger or prejudice of defendant.

2d. That it was not in the prosecution of any unlawful purpose.

3d. That it was not anticipated or contemplated by any of the parties either that deceased should attack or be in any danger of an attack from him.

*Second*—The question asked the defendant, Dennis, "If, just after Judge Belt left, you did not say to Mr. Hampton, 'there goes the d——d son of a b——h, now?'" was competent and proper.

The whole theory of the defense was that this killing was done in necessary self-defense. Testimony which tended to disprove this theory was duly admissible. It is a plain and reasonable proposition of law that a defendant is not permitted by his own conduct, either by words of reproach or other means, to procure hostile demonstrations or an attack to be made upon him, and then, having done so, slay his antagonist, and call it necessary self-defense.

*Third*—It is hard to determine in what manner the evidence of the witness, Gratton, objected to by the defendant, could have any effect, one way or the other. At most, the testimony was not material. The question was only addressed to the witness to refresh his memory, and to explain the relevancy and connection of his other testimony. The rule which allows questions leading to the main question or questions in explanation of other answers made by the witness, I think does not exclude, but permits this kind of question. The

defendant was not, and could not be injured, either by the question or the answer.

*Fourth*—It is true that most of the testimony taken at the trial, on the part of the prosecution, was offered in rebuttal. I think the ruling of the Court was correct. The evidence offered by the prosecution in chief was full and conclusive, not only that deceased was killed by defendant, but that defendant also said, "I am the man that did it; I have given him what I promised him."

The testimony established not only the fact of killing, but the fact of antecedent malice, and premeditation also.

The defendant, in his testimony, did not pretend that he had not killed the deceased, but relied upon the plea of fear, and necessary self-defense. Testimony, therefore, which tended to show that the plea of self-defense was not true, was competent testimony in rebuttal.

The action of the Court is not only in accordance with Section 362 of the Criminal Practice Act, but is also in accord with the ordinary rules of evidence. It is not necessary for a prosecution or a plaintiff, nor is it proper practice to anticipate a defense.

*Fifth*—The answer to the objection to the ruling of the Court, in permitting the declaration of defendant, in 1865, to the witness, Dorsey, is the same as that here given to the some objection to testimony of the witness, Hampton, in the opinion of the Court (which I think was right), that any legal testimony going to show that defendant acted in a spirit of revenge or hatred, and not through fear of danger, was properly admissible in the trial of that issue. So, also, by the same rule, anything which tended to show that there was no danger to the defendant from deceased was properly admissible.

*Sixth*—For the same reason as just given—the rulings of the Court upon defendant's motion to strike out Blair's testimony, and overruling objections to testimony of the same witness.

*Seventh*—For the same reason, the ruling of the Court upon defendant's objections to Hampton's testimony, was admissible.

*Eighth*—The question to the witness, Englander, objected to by the defendant, may have been irregular, but I am at a loss to see in what manner it could have possibly wrought any injury to the defendant, or how the question or answer could, in any manner, have affected the case, one way or another.

*Ninth*—The mode of presenting the instructions of the Court objected to by the defendant, does not, I think, do them justice. A sentence taken here and there from the instructions, does not give this Court a proper view of the instructions. I think that, to take the whole instructions together, they will be found to state the law correctly. The first part of the instruction, it cannot be insisted, injured the defendant, for the jury did not find the defendant guilty of murder in the first degree.

Nor is the point well taken, that the Court, upon the subject of insanity as a plea, warned the jury that simulated insanity was of frequent occurrence as a defense, when one had committed an offense against the law that must endanger his life. The instruction was proper, as calling the jury's attention to the issue raised.

Nor was it error in the Court to charge that the homicide itself, however horrible in itself, would not be admitted as a presumption of insanity. Murder is always unnatural, and it might just as well be claimed that any crime repugnant to humanity was a proof of insanity.

*Tenth*—Appellant's point, numbered in brief tenth and eleventh, ignores not only the right of self-defense in the deceased, but also asserts, too broadly, the right of self-defense in the defendant. (Sec. 31 of Act concerning crimes and punishments.) The Court's instructions are in entire harmony with the statute.

*Eleventh*—The juror, Russim, did not obey the instructions of the Court, in failing to refrain from conversations about the case while the trial was pending. By his conduct, he laid himself liable to be punished by the Court for a contempt of its orders, just as he would if, after having been selected, he had refused to attend the trial, or, by intoxication, disquali-

fied himself for performing jury duty. It is not claimed or pretended that the juror was improperly approached, or influenced, in any way; all that is claimed is, that the juror, having heard the testimony, indiscreetly gave expression to his opinion before the final submission of the case.

SPRAGUE, J., delivered the opinion of the Court, WALLACE, J., TEMPLE, J., and RHODES, C. J., concurring.

The transcript in this case consists of two hundred and twelve legal cap manuscript pages, without an index or any reference to its contents attached thereto, nor do the points and brief of counsel for appellant make any intelligible reference to the page or pages of the transcript upon which matter objected to can be found. This mode of presenting transcripts in criminal cases imposes much labor upon this Court, and is in direct violation of our Rule 5. Counsel who bring cases here on appeal are expected to conform to our rules. ' The gross negligence of counsel for appellant in this case, in presenting such a transcript, and a correspondingly incomplete brief, merits severe censure.

We have examined with care all the evidence and all the instructions given and refused by the Court, as presented by the record.

The error alleged in defendant's first point is not well taken. The question objected to was proper in itself, but, if otherwise, the answer thereto could not have prejudiced the defendant.

The objection to the question embraced in defendant's second point was properly overruled. The prosecution were entitled to an answer to the question, it being on cross-examination of the defendant as a witness in his own behalf respecting an occurrence about which he had testified in chief: First—For the purpose of showing express malice; and, Second—For the purpose of laying a foundation to impeach his credibility.

The objection to the question embraced in defendant's third point should have been sustained, but, as no answer

was given to the question, the error was immaterial and could not have prejudiced the defendant.

Defendant's fourth point is not well taken. The evidence in chief on the part of the prosecution had been strictly confined to acts and declarations of defendant and deceased, Belt, and others who were present at the time of the homicide. No evidence was introduced of matters occurring at any other time or place, or of any previous hostile feeling on the part of defendant against deceased.

The evidence on behalf of defendant, including his own testimony, had taken a very wide range, covering a space of over four years, and tended to establish that during all this time a most hostile, vindictive feeling had been entertained and indulged in by the deceased toward defendant; that deceased had threatened to kill defendant, and on one occasion, five years before his death, according to the testimony of defendant himself, would have taken the life of defendant but for want of a percussion cap on his pistol. No evidence had been offered or introduced on the part of the prosecution in the first instance tending to show express malice on the part of defendant, except his declarations at the time of and immediately in connection with the homicide or shooting of deceased by him. Under these circumstances the Court, after defendant had closed his evidence, was fully justified in permitting the prosecution to introduce evidence tending to rebut the evidence in behalf of defendant as to the state of feeling existing during this time on the part of deceased toward defendant, and further tending to establish a hostile, vindictive feeling indulged and entertained continuously, for several years before and up to the day of the homicide, on the part of defendant toward the deceased; and also any threats which defendant had made against the life of deceased, for the purpose of showing express malice. The point and character of the evidence introduced by either the defendant or the prosecution, in rebuttal, quite as explicitly as any suggested by the party, furnish to the Court reasons for allowing either party, after having once closed his evidence in chief, to offer evidence upon their original cause under Section 362 of the

Criminal Practice Act. These views apply with controlling force to defendant's fifth, sixth, seventh and eighth points, as presented in brief of counsel, neither of which is well taken.

The exception urged by defendant to instructions given to the jury, at request of the prosecution, embraced in the tenth point of brief of counsel, is not well taken.

The portion of the instructions given, and to which objection is first urged under the tenth point, was given in illustration of the legal distinction between murder in the first degree and murder in the second degree. The sentence in which the objectionable matter is found reads as follows: "Let it be supposed that a man, without uttering a word, should strike another on the head with an axe, it must, by every principle by which we can judge of human actions, be deemed a premeditated act. Again, when one with a loaded pistol takes deliberate aim and shoots another, it is held to be murder in the first degree." This language, taken by itself, without qualification, is doubtless obnoxious to the objections urged by counsel, but with the qualifications contained in subsequent portions of the instructions given in the same connection, at request of the prosecution, and the first and eighth instructions given by the Court at request of defendant as applicable to justifiable homicide, we are satisfied defendant was not prejudiced thereby, but that the law upon the point embraced in the instruction was finally given to the jury in a light quite as favorable to defendant as he had a right to demand.

The second objection to language used in an instruction under defendant's tenth point is without foundation. The entire instruction in which the objectionable language is found was addressed to the jury with a view of impressing upon them the necessity of a careful investigation of the evidence offered to establish the fact of insanity, when such a fact is relied upon as a defense. The language objected to was intended not as particularly applicable to the case then before the Court, but as general remarks, or statement of occurrences notoriously existing under special circumstances stated by the Court, and was presented to the jury

as illustrative of the importance of special care and circumspection in considering the evidence tending to establish the insanity of a defendant at the time of the homicide charged against him, in all cases where such defense is relied upon.

We are satisfied the instruction as given, was entirely proper under the circumstances developed by the evidence in this case. It reads as follows: "In prosecutions for crimes the defense of insanity is often interposed, and thereby becomes a subject of paramount importance in criminal jurisprudence. A due regard for the ends of justice and the peace and welfare of society, no less than mercy to the accused, require that it should be thoroughly and carefully weighed. It is a plea sometimes resorted to in cases where aggravated crimes have been committed under circumstances which afford full proof of the overt acts, and render hopeless all other means of evading punishment. While, therefore, it ought to be viewed as a not less full and complete, than it is a humane defense, when satisfactorily established, it yet should be examined into with great care, lest an ingenious counterfeit of the malady furnish protection to guilt."

The further objection under the tenth point of defendant, urged to a single sentence found in the instructions given, is without force or merit, when taken in connection with sentences immediately preceding and following in the same paragraph.

The eleventh point made by defendant is untenable. The gist and substance of the ninth and tenth instructions asked for by the defendant and refused by the Court, are fully embraced in the first and eighth instructions asked for by him and given by the Court.

The affidavit relied upon to establish improper conduct on the part of the juror, Thomas Russin, does not tend to show that said juror had, during the progress of the trial, been voluntarily or otherwise subjected to any improper influence. All that can be claimed for this affidavit is that it tends to show that the juror had not a proper appreciation of his position as a juror, and manifested an inclination to talk about the case; but the same affidavit furnishes conclusive

evidence that the impropriety of the juror could not have affected the defendant prejudicially.

Upon a careful examination and consideration of all the evidence presented in this case, it most conclusively appears that the defendant committed the homicide charged in the indictment deliberately and premeditatedly, in pursuance of frequent previous threats so to do, and under circumstances furnishing not the least possible present provocation or rational excuse therefor; and we are unable to discover from the evidence any fact or circumstance in extenuation of the crime, as charged in the indictment, or tending to reduce the same below murder in the first degree, or which could have influenced the jury in determining the degree of the crime, to be murder in the second degree instead of murder in the first degree, which the evidence so clearly shows it to have been. Further, we cannot, consistently with our sense of duty, restrain an expression of our surprise at, and disapprobation of, the unparalleled leniency of the Court in fixing by its judgment the lowest penalty of the law upon the verdict as rendered, instead of the extreme penalty, which a proper administration of justice so manifestly demanded.

We are of opinion that the Court below was fully justified in overruling defendant's motion for a new trial, and that the judgment and order denying a new trial should be affirmed.

So ordered.

CROCKETT, J., expressed no opinion.