[Crim. No. 3330. Second Appellate District, Division One.—May 20, 1940.]

THE PEOPLE, Respondent, v. NORMAN BANKS, Appellant.

Henry C. Huntington for Appellant.

Earl Warren, Attorney-General, and Bayard Rhone, Deputy Attorney-General, for Respondent.

DORAN, J.—The defendant and appellant, Norman Banks, was charged in an information filed by the district attorney, in effect, with receiving money to be used as a wager upon the result of a horse race, in violation of subdivision 3, section 337a of the Penal Code.

At the trial in the superior court a jury was duly waived by the defendant and, by stipulation, the cause was submitted upon the transcript of the evidence adduced at the preliminary hearing, supplemented by the testimony of additional witnesses produced on behalf of defendant, and on behalf of the People in rebuttal.

The defendant was adjudged guilty, and the appeal is from the judgment and from the order denying defendant's motion for a new trial.

■ The transcript of the evidence adduced at the preliminary hearing revealed the following testimony. Police Officer R. L. Lake, on October 10, 1939, at noontime, was sitting at the counter of a cafeteria on Sixth Street near Main in Los Angeles. The defendant walked up to the counter and sat down next to a lady, who was sitting beside Officer Lake and who was identified at the trial in the superior court as Mrs. Irma Howard. The witness Lake testified that he heard the defendant ask Mrs. Howard if she had any horses that she wished to bet on that day, and that she told the defendant she wanted to bet "across the board" on a horse named "Bonicon", in the fourth race at Bay Meadows. Mrs. Howard gave the defendant $6.40. The defendant put the money in his coat pocket, wrote something on a small scratch pad, turned around and walked out of the cafeteria. The witness Lake also left the cafeteria, and he then saw the defendant standing across the street talking to two or three men in front of a magazine shop.

Officer Lake testified that "Bonicon" was the name of a horse running in the fourth race that day at Bay Meadows, which is a racetrack in the northern part of the state.

Lake further testified that he saw the defendant again on the following day in the same cafeteria, at which time the defendant was walking up and down the aisle writing something, but that he, the witness, could not see what was written. The defendant was arrested that afternoon. No "scratch sheet" or racing form was found on his person.

Mrs. Irma Howard did not testify at the preliminary hearing, but did testify at the trial on behalf of the defendant. She stated that she had known the defendant for about five years, and also knew his wife; that she ate at the cafeteria almost every day, and that she saw the defendant nearly every time she was there; that on October 10, 1939, she was sitting at the counter, and that she saw the defendant standing near the doorway; that she called to him and said: "I believe I owe you $6.40" which, she testified, was the balance due him on a loan of $10 which he had made to her three or four weeks previously. Mrs. Howard testified that she frequently borrowed money from the defendant. The witness denied that she had ever made a bet on horses with the defendant, although she had placed some bets at the racetrack.

Mr. Gerald Thornton, a bartender at the cafeteria, also testified on behalf of the defendant. He corroborated the testimony of Mrs. Howard with regard to her conversation with the defendant at the time she handed the latter the sum of $6.40. Thornton testified that he did nòt remember anything being said about horses.

Appellant testified in his own behalf and related the same story that had been previously told by Mrs. Howard and Mr. Thornton. He stated, in addition, that he was in the retail luggage business on Hollywood Boulevard, with his brother, but that he spent considerable time around noontime at the cafeteria in question; that he received a monthly income of from $100 to $300 from the Ben-Banks Realty Company. Appellant testified that he had placed bets on horses at three or four different bookmakers' establishments, but denied that Mrs. Howard had given him any money for the purpose of wagering on a horse.

The foregoing constitutes the only legal evidence in the case. Manifestly it is not sufficient to support a judgment of guilty unless the doctrine of reasonable doubt is to be disregarded.

█ It is true that respondent, in addition to the above, relies upon so-called rebuttal evidence received over defendant's objection, consisting of testimony by one Emery, another police officer. However, such evidence, even assuming that it had some probative value, having been improperly admitted, may not be taken into account.

█ But the judgment must be reversed for additional reasons. In connection with the proceedings on the motion for a new trial, the record reveals the likelihood or possibility of evidence outside of the record influencing the outcome of the trial, as well as the ruling on the motion for a new trial. For example, the trial judge in passing on the motion for a new trial stated the following, referring to the defendant: "THE COURT: . . . I still do not believe him. I am satisfied he is a bookmaker; I am satisfied the place that he is hanging around is a bookmaking establishment. In fact, I have seen him in action myself, if that will stop him. MR. ERBSEN (defendant's counsel): Seen him in action? THE COURT: Yes, down at the Tiffin, and all around there. I have my lunch down there every day."

168

In the circumstances, the judgment and the order denying the motion for a new trial must be reversed, and it is so ordered.

York, P. J., and White, J., concurred.