[Crim. No. 5063. In Bank. May 31, 1950.]

THE PEOPLE, Respondent, v. CHARLES H. WOODS, Appellant.

Chotiner & Chotiner and Murray M. Chotiner for Appellant.

Fred N. Howser, Attorney General, and Kent C. Rogers, Deputy Attorney General, for Respondents.

GIBSON, C. J.—In count one of an information, defendant Woods was charged with receiving a bet on the outcome of a horse race, in violation of Penal Code, section 337a, subdivision 3. Count two charged that defendant kept and occupied an automobile with a book and papers for the purpose of recording a wager, in violation of subdivision 2 of the same section. A jury found the defendant guilty on both counts and he was sentenced to be imprisoned in the county jail for six months on each count, the sentences to run concurrently. This appeal is taken from the judgments of conviction and the order denying defendant's motion for new trial.

Early in the afternoon of November 23, 1948, Police Officers Potter and O'Keefe went to a bar near Florence and Vermont

Avenues in the city of Los Angeles. Potter entered the bar and O'Keefe waited across the street. According to Potter's testimony, when he went inside defendant was seated at the counter in the bar with a scratch sheet in front of him. Two men, one of whom carried the sports section of a newspaper, approached defendant at different times and spoke to him. Each man handed some currency to defendant, who looked at the scratch sheet, went to a telephone booth in the bar and had a conversation over the telephone. Potter had defendant under observation in the bar for about 20 minutes, and during that time defendant did not eat or drink anything. Defendant left the bar and got into his automobile which was parked at the curb near by.

Police Officer O'Keefe testified that a newsboy, who had been standing on the corner studying a racing form, took money from his pocket, looked in the direction of defendant and pointed to the bar. Defendant shook his head from side to side. The newsboy entered the bar, remained for about 30 seconds, came out, and walked directly to defendant's car. The newsboy said to defendant, "Give me $2.00 to win on Secret Flight in the 8th at Tanforan," and handed him some currency. Defendant replied, "Okay," and wrote something on a piece of paper. After the newsboy departed, O'Keefe engaged defendant in a conversation. Defendant said that he had been taking bets in that vicinity for about two months, that he phoned the bets out, and received 10 per cent for handling them. O'Keefe thereupon placed defendant under arrest. At that time defendant had in his pockets a "Metropolitan Scratch Sheet," an address book and over $200 in cash. The piece of paper on which O'Keefe had seen the defendant write was found on the seat of the car and contained the notation "8-Sec. Fligh-2-" and some other "scribbling." O'Keefe, who qualified as an expert on bookmaking practice, testified that the piece of paper was what is commonly called a "betting marker"; that the numeral "8" signified the 8th race; that "Sec. Fligh" indicated "Secret Flight," the name of a horse, which, according to defendant's scratch sheet, was running in the 8th race at Tanforan Race Track; and that the number "2," with a dash after it, signified $2.00 to win, nothing to place or show. The address book was of a type frequently carried by bookmakers for listing the names or initials of debtors and creditors and was known in the trade as an "owe sheet." The scratch sheet, the paper on

which defendant noted the bet, and the address book were received in evidence.

Defendant denied having received any money in the bar, except as change for his purchase of a sandwich and coffee. He stated that his exchange of money with the newsboy was for the purchase of a newspaper, and explained the notation he had made on the piece of paper as being merely the recordation of a personal bet that he intended to make. Defendant also denied having made the statements attributed to him by Officer O'Keefe.

The first ground for reversal urged by defendant is that the evidence is insufficient to support a conviction on either count. We are of the view that defendant's contention must be sustained as to the second count but that the evidence is sufficient to support the judgment on the first count.

Section 337a, subdivision 2 of the Penal Code defines the offense charged in count two as the keeping or occupancy "for any period of time whatsoever, any room, shed, tenement, tent, booth, building, float, vessel, place, stand or inclosure, of any kind, or any part thereof, with a book or books, paper or papers, apparatus, device or paraphernalia, for the purpose of recording or registering any bet or bets, . . . upon the result, or purported result, of any trial, or purported trial, or contest, or purported contest, of skill, speed or power of endurance of man or beast. . . ." It is clear that the offense thus defined is the maintenance of some type of bookmaking establishment. Assuming that an automobile under some circumstances might be kept or occupied as a bookmaking "place" and thus come within the terms of the statute (see *People* v. *Roche,* 68 Cal.App.2d 665, 669 [157 P.2d 440]), the evidence does not show that the automobile in the present case was so maintained. The only evidence relied upon to substantiate the charge is that within a few minutes after defendant had entered his automobile, he received a bet from a newsboy who had been standing on the corner, that the paper on which defendant noted the bet was found on the car seat, and that when arrested defendant had a scratch sheet and an address book on his person. Something more than this is necessary to constitute a violation of subdivision 2.*

Although it can be inferred that defendant used the automobile to travel to and from the community where he engaged in

---

*The statute requires that the place must be kept or occupied with books, papers or other paraphernalia and that it must be so kept or occupied for the purpose of recording bets.

the bookmaking business, it cannot be reasonably inferred from the evidence that the automobile was kept or occupied as a bookmaking establishment. The judgment must be reversed as to count two.

The offense charged in count one, the violation of subdivision 3 of section 337a, is committed when money is received as a wager on a race. (*People* v. *Hoffman*, 94 Cal. App.2d 379 [210 P.2d 885].) The testimony of Officer O'Keefe concerning the transaction between defendant and the newsboy, the piece of paper on which defendant recorded the bet, and defendant's admissions with respect to the business in which he was engaged, are clearly sufficient to support the verdict of the jury that defendant was guilty of taking a wager on the outcome of a horse race. Defendant relies on *People* v. *Banks*, 39 Cal.App.2d 164 [102 P.2d 818], in which it was held that evidence somewhat similar to that in the present case was insufficient to support a conviction under subdivision 3. However, it appears, as stated in the case of *People* v. *Hoffman, supra*, at page 382, that in the Banks case "the appellate court weighed the evidence and decided in accordance with the testimony of witnesses who were not believed by the trial court and contrary to the evidence that the court had accepted as true." *People* v. *Banks, supra*, is disapproved insofar as it is in conflict with our holding that the evidence is sufficient to support the judgment as to count one.

Defendant contends that the trial court erred in denying his motion to strike Potter's testimony. At the close of the direct examination of this witness, defendant inquired whether the People were relying upon the events in the bar or the transaction with the newsboy as constituting the offense charged in count one. The People answered that the purpose of Potter's testimony was not to show that an offense was committed in the bar, but to illuminate the character of the transaction which occurred later outside the bar. Defendant then moved to strike the testimony of Potter as being evidence of crimes with which defendant was not charged.

It is settled in this state that except when it shows merely criminal disposition, evidence which tends logically and by reasonable inference to establish any fact material for the prosecution, or to overcome any material fact sought to be proved by the defense, is admissible although it may connect the accused with an offense not included in the charge. (*People*

v. *Dabb,* 32 Cal.2d 491, 499, 500 [197 P.2d 1] ; *People* v. *Peete,* 28 Cal.2d 306, 314, 315 [169 P.2d 924].)     The actions of defendant and the two unidentified men in the bar, which indicated that defendant engaged in the taking of bets, shed some light on the nature of the transaction between defendant and the newsboy which followed shortly thereafter, and also tended to confirm the admissions made to O'Keefe with respect to defendant's occupation. (See *People* v. *Schwartz,* 14 Cal.App. 9, 12 [110 P. 969].) The evidence was therefore relevant and the motion to strike was properly denied.

The trial court at the request of defendant instructed the jury on the general subject of admissions and confessions. Instructions relative to a confession were not applicable to the facts of this case because the only statements made by defendant outside the courtroom were those made to Officer O'Keefe which were merely admissions and did not amount to a confession of either of the offenses charged. Of course, defendant, having requested that the court give instructions relating to confessions, is in no position to base a claim of error on the ground that instructions on that subject were inapplicable, and he does not do so.     He does, however, complain that the following instruction, which he did not request, is erroneous: "If under my instructions you find that a voluntary confession was made, you are the exclusive judges as to whether or not the confession was true; and in deciding that question you should consider all the circumstances connected with the making of the statement, as shown by the evidence. *But even if you should find that a confession was false, either entirely or in part, it remains, nevertheless evidence for your consideration, to be given such significance as your judgment may determine under instructions that I shortly shall give concerning false statements made by a person accused of crime."* (Italics added.) No such further or other instructions were given in this regard.

This instruction in effect permits the jury to infer the guilt of an accused from the falsity of his confession, and the italicized portion would appear to be clearly erroneous when given without direct qualification by appropriate limiting instructions. It was recently condemned in *People* v. *Ford,* 89 Cal.App.2d 467, 473 [200 P.2d 867], where it was given without explanation. In that case the court stated that it could not see how the jury could have evolved any reasonable theory under which a false confession of guilt could be considered as an indication of guilt and that "if this could not

be done the instruction was confusing and impossible of rational application to the evidence.'' Assuming that under some circumstances a jury might be told that a voluntary but false confession has some probative value, the instruction should, nevertheless, be carefully qualified to point out the evidentiary effect of such a confession.

We are of the opinion, however, that the instruction complained of was not prejudicial in the present case. There was clear and convincing testimony by an eyewitness to the transaction that defendant had accepted a bet from the newsboy, and the testimony was supported by the introduction in evidence of the paper on which defendant recorded the bet. It is true that in *People* v. *Ford, supra,* where the same instruction was given, the judgment was reversed, but in that case there was only slight evidence of guilt aside from the confession, and there was other error which the court held reversible.

Defendant also complains of the conduct of one member of the jury and asserts that because of it he did not receive a fair trial. It appears that during a recess, a juror approached counsel for defendant and the deputy district attorney and inquired, ''Is O'Keefe still here?'' but he received no reply. The following morning, the trial judge in chambers, with the reporter present but in the absence of defendant and both counsel, asked the juror for an explanation of his conduct. The juror replied that he merely wanted to ascertain the meaning of Officer O'Keefe's use of the phrase ''place and show.'' The judge admonished the juror he must not discuss the case with anyone and told him that if he had spoken to O'Keefe, it would have constituted a violation of his oath as a juror. Thereafter, in open court, defendant moved for a mistrial on the ground that the juror's conduct in seeking out one of the People's witnesses evidenced an unusual attitude that might well preclude impartial deliberation. The judge then informed counsel as to the substance of his conversation with the juror in chambers. O'Keefe was recalled and testified that he had never spoken to the juror. The People offered to stipulate that the juror could be withdrawn and defendant tried by the eleven remaining jurors, which offer was refused. The motion for mistrial was denied, the court concluding that the question as to the meaning of ''place and show'' would have been proper if asked in open court, and that there was no indication that the juror was in any way biased.

Although the conduct of the juror was unfortunate, it was not such as to require that a mistrial be declared. In cases in which a conversation has taken place between a juror and a witness, this fact in and of itself has been held to be insufficient to raise a presumption that defendant was prejudiced. (*People* v. *Dunne*, 80 Cal. 34, 36 [21 P. 1130] ; *People* v. *Henry*, 132 Cal.App. 557, 562, 563 [23 P.2d 77] ; see *People* v. *Golsh*, 63 Cal.App. 609, 617, 618 [219 P. 456].) Where, as here, the juror's attempt to communicate with a witness has been unsuccessful, there is even less reason to hold such conduct prejudicial. (*Cf.*, *People* v. *Dennis*, 39 Cal. 625, 637, 638.)

On this appeal defendant for the first time claims it was error for the judge to converse with the juror in defendant's absence. This was not assigned as a ground for the motion for mistrial although at the hearing defendant was informed by the judge concerning the conversation. It appears, however, that defendant was unaware of the fact that during the course of the conversation in chambers the juror asked ''What is a hung jury?'' and the trial judge explained that ''in a criminal case you have to have twelve jurors reach a verdict of either guilty or not guilty. If all twelve jurors do not agree, it is a hung jury.'' Private communications between a judge and a juror with respect to matters related to the case are of course improper, but nothing took place in the conversation complained of which could possibly have prejudiced defendant and therefore it did not constitute reversible error. (*People* v. *Alcalde*, 24 Cal.2d 177, 188, 189 [148 P.2d 627].)

Insofar as count one is concerned, the judgment and order denying motion for new trial are affirmed. As to count two, the judgment and order denying motion for new trial are reversed.

Shenk, J., Edmonds, J., Traynor, J., and Spence, J., concurred.

CARTER, J.—I dissent.

The majority opinion concedes that the instruction which related to a confession was inapplicable to the case, and that a portion of the instruction given was clearly erroneous, but holds that it was not prejudicial to the defendant. I cannot agree. In my opinion, it was prejudicial, and when considered with other occurrences at the trial, constituted reversible error.

The word "confession" has a connotation to the average person which the word "admission" does not have. (Wigmore, Evidence, 3d ed., § 816) points out that where a confession is concerned, the *testimonial* aspect is the predominant one. The jury may very well have based its verdict on the supposed confession of guilt because it was of the impression that defendant had freely and voluntarily said that he had committed the crime and was thereby impliedly willing to receive his punishment. In addition to the prejudicial effect of the instruction which should not have been given under the facts of the case, the instruction went even farther and permitted the jury to consider it even if it were *found to be false*. It is significant that no instruction was given which would tend to clarify this statement, if such clarification could have been achieved. I cannot see how a false confession of guilt can be considered as having any bearing on a person's guilt or innocence. In *People* v. *Ford*, 89 Cal.App.2d 467 [200 P.2d 867], the court was concerned primarily with the *falsity* of a confession obtained *after* the accused had been informed of the crime with which he was charged. It was there held that the giving of the same instruction as the one present in this case constituted reversible error. The statements made by the defendant in this case were made prior to any accusation or charge against him and could not have been considered as a confession. Wigmore (§ 821) defines a confession as *"an acknowledgment in express words, by the accused in a criminal case, of the truth of the guilty fact charged or of some essential part of it."* [Emphasis that of the author.]

There was no evidence in the case which warranted the giving of an instruction on the effect of a confession. In *Davenport* v. *Stratton*, 24 Cal.2d 232 [149 P.2d 4], this court held that the giving of an instruction without support in the evidence constitutes prejudicial error where it is calculated to mislead the jury.

With respect to another occurrence at the trial, the majority concede that the conduct of the juror was "unfortunate," but that the fact of the conversation, or attempted conversation, between the juror and the witness "in and of itself" did not constitute prejudicial error. It is also stated that the conversation (of which the defendant was not informed during the course of the trial) between the judge

and the juror, with reference to the meaning of a hung jury, was improper but could not have prejudiced the defendant.

I am of the opinion that the testimony of Potter was also prejudicial in that it tended primarily to show criminal disposition on the part of the defendant. This is apparent from the majority opinion which states that defendant's actions in the bar "indicated that defendant engaged in the taking of bets, shed some light on the nature of the transaction between defendant and the newsboy which followed shortly thereafter, and also tended to confirm the admissions made to O'Keefe with respect to defendant's occupation."

It would seem to me that it cannot fairly be said that had these errors not occurred the verdict would have been the same. (*People* v. *Orcalles*, 32 Cal.2d 562, 573 [197 P.2d 26].)

I would therefore reverse the judgment as to count one as well as to count two.

I concur: Schauer, J.

Appellant's petition for a rehearing was denied June 29, 1950. Carter, J., and Schauer, J., voted for a rehearing.