[Crim. No. 4631.   Second Dist., Div. Two.   July 24, 1951.]

THE PEOPLE, Respondent, v. ELY POLLACK, Appellant.

Murray M. Chotiner for Appellant.

Edmund G. Brown, Attorney General, and Stanford D. Herlick, Deputy Attorney General, for Respondent.

McCOMB, J.—From an order denying defendant's motion for a new trial after conviction of violating section 337a, subdivision 1, of the California Penal Code,[1] defendant appeals.

*Facts*: On May 10, 1950, police officers of the city of Los Angeles saw defendant leave a restaurant and enter a car. The officers followed him to a hotel which he entered. After about two minutes he returned to the car and drove to another part of the city where he parked and entered a residence. He remained on the premises about 10 or 15 minutes after which time he drove to another residence where he proceeded to the house holding in his hand a brown envelope. About two minutes later he was placed under arrest and taken inside the premises by the officers where they saw one Edwina Davis. In defendant's presence Miss Davis was asked why defendant was there. She answered that he had come to collect six dollars she had owed him for several weeks for bets previously made, and she told the officers that she occasionally bet on horses and had telephoned in her last bet during the latter part of April.

Defendant, when asked why he was there, replied that he had merely come to see the occupants of the residence. He admitted leaving a Metropolitan Scratch Sheet. The brown envelope taken from appellant contained several papers upon

---

[1]Section 337a, subdivision 1 of the Penal Code reads: "Every person, 1. Who engages in pool-selling or bookmaking, with or without writing, at any time or place; . . . Is punishable by imprisonment in the county jail or state prison for a period of not less than thirty days and not exceeding one year.

"This section shall apply not only to persons who may commit any of the acts designated in subdivisions 1 to 6 inclusive of this section, as a business or occupation, but shall also apply to every person or persons who may do in a single instance any one of the acts specified in said subdivisions 1 to 6 inclusive."

which were ruled lines and notations in ink. There were also a number of cards bound with a rubber band and a paper with ink notations was found in defendant's pocket. Nine Metropolitan Scratch Sheets dated May 10, 1950, were found in the car driven by him as was a Daily Racing Form dated May 5, 1950.

Defendant told the officers the penciled notations were not in his handwriting but he had written the ink notations thereon. He further told them he "worked for a guy named Charley"; that he had picked up the sheets that morning but refused to divulge the source; that in tabulating the sheets he usually made his computations in the morning, and he had been working for some time. When asked to explain the owe sheet in his pocket he stated, "That is my sheet. Don't take it or you will foul me up." He was then asked if it was his owe sheet and he declined to answer. A handwriting expert testified at the trial that the ink notations appearing on the papers and cards found in defendant's pocket were written by defendant.

One of the arresting officers qualified as an expert on bookmaking activities in Los Angeles county, and described such bookmaking activities as follows:

"The bookmaker has numerous agents working for him. For instance an agent might work in a bar where he will accept wagers orally from the different bettors and he will either record them or he will call out to a Central location, to what is commonly referred to as a phone spot. They are then recorded at the phone spot.

"The following day the agent or collector will take the sheets from the bets that have been recorded the previous day and go to different locations throughout the city or the county and either collect from the bettors or the bettors will pay the bookmaker or the agent the amount that they owe him."

He stated that in his opinion the ruled papers taken from the brown envelope were A B C or professional type betting markers; that they were used to record the name of the bettor, the agent or bookmaker, the date, the index number of the horse bet upon, the amount of the bet, the result of the race and the amount won, if any, by the bettor. He also stated the sheets recorded wagers on horses running at various tracks throughout the United States, and the paper found in defendant's pocket was a "dope sheet" or "owe sheet" used to record the winnings or losses of the bettors.

On one of the betting markers appeared the name "Edwina"

opposite which was the figure "6.85" indicating to the officer that Edwina Davis did in fact owe defendant at least six dollars.

The officer also testified that bookmaking may be defined as the accepting of bets or wagers on horses and balancing such bets or wagers so that the acceptor cannot lose.

■ *Questions* : First : *Did the trial court err in instructing the jury as follows?*

"Every person who engages in poolselling or bookmaking with or without writing, at any time or place, is guilty of a crime.

"To engage as used in section 337a, subd. 1, means to conduct, to carry on, to operate.

"It is not necessary to show a violation of any other subdivision of Section 337a in a prosecution under Subdivision One.

"The offense designated by Subdivision One is separate and distinct from that in any other subdivision."

*No.* Defendant contends that the trial judge should have defined the term "to engage" as meaning activity continuous in nature and thus connoting more than a single act. Also he contends that the term "bookmaking" should have been defined further for the jury and the failure to do so was erroneous because of the instruction that it was unnecessary to show a violation of any other subdivision of section 337a.

These contentions are devoid of merit. ■ The reading of section 337a, subdivision 1, makes it clear that a single violation of such section will constitute the offense proscribed. (*People* v. *Bradford,* 95 Cal.App.2d 372, 379 [213 P.2d 37].)

*People* v. *Coppla,* 100 Cal.App.2d 766 [224 P.2d 828], is not here in point. In such case there was no evidence that defendant had violated section 337a, subdivision 3 of the Penal Code, the court saying at page 769, "There was no evidence that defendant was occupied or employed in pool selling or bookmaking in a single instance at any time or that he knowingly aided another in the making of a book of bets or in the sale or distribution of shares or chances in a wagering pool. There is no evidence that he knew the papers in the sealed envelopes were betting markers or owe sheets, or that he had any knowledge of the contents of the locked trunk. There is no evidence of the ownership of the automobile. There is no evidence that the writing on the envelopes, or on any of the material, was that of defendant. Without such evidence, it must be presumed that it was not in his handwriting. The

prosecution having presented as a part of its case the statement of the defendant that he did not know what the sealed envelopes contained, is bound by that evidence in the absence of proof to the contrary.''

■ Neither is there any merit in defendant's contention that the trial judge should have given a further definition of the term bookmaking. Mr. Presiding Justice White, speaking for the court in *People* v. *Bradford, supra,* at page 377, accurately stated the rule as follows:

''It requires no citation of authority in support of the proposition that when a statute is so vague and uncertain that a person of ordinary intelligence cannot understand its meaning, it may not be upheld as a valid statute. However, we are persuaded that the subdivision of the code section [subdivision 1 of section 337a, Penal Code.] here under attack cannot be strictured as one, the provisions of which are so vague, uncertain, and ambiguous as to render it unconstitutional on that account.

''We are satisfied that the terms 'poolselling' and 'bookmaking' are so well understood that no person of ordinary intelligence can misunderstand the import and meaning of the terms and the scope of the acts prohibited by the penal statute into which they have been incorporated. It would appear that these terms are of general use and that they have a well-accepted and recognized meaning throughout many jurisdictions, and especially among those dealing with the prohibition and regulation of betting on horse races or other contests of skill. . . .

''Webster's New International Dictionary, Second Edition Unabridged, published in 1948, defines the word 'bookmaker' as . . . 'One who makes a book of bets,' and it defines 'bookmaking' as 'the making of a book of bets.' . . .

''. . . We are convinced that the term 'bookmaking' here under consideration and as used in the statute must be held .to clearly mean the making of a betting book. That although not defined in the statute the terms 'pool-selling' and 'bookmaking' are commonly known and understood, and not therefore subject to the stigma of indefiniteness claimed by appellant. To hold otherwise would require the courts to shut their eyes and ears to the everyday happenings of contemporary life. This they cannot and will not do.''

■ Second: *Was there substantial evidence to sustain the conviction?*

*Yes.* ■ The rule is established in California that an

appellate court will examine the record to determine only whether it contains sufficient evidence from which an inference of guilt is warranted. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].)

In the present case the evidence set forth above clearly supports the findings of the jury that defendant was guilty of violating section 337a, subdivision 1 of the Penal Code.

*People* v. *Banks,* 39 Cal.App.2d 164 [102 P.2d 818], has been overruled by the Supreme Court in *People* v. *Woods,* 35 Cal.2d 504, 509 [218 P.2d 981]. (See also *People* v. *Hoffman,* 94 Cal.App.2d 379, 382 [210 P.2d 885].) Neither is *People* v. *Coppla,* 100 Cal.App.2d 766 [224 P.2d 828], here in point, for, as we indicated above, in such case the court held that there was not any evidence to sustain the finding that the defendant in such case had violated any provision of the Penal Code.

Affirmed.

Moore, P. J., and Wilson, J., concurred.

A petition for a rehearing was denied July 31, 1951, and appellant's petition for a hearing by the Supreme Court was denied August 23, 1951.