[Crim. No. 5869.   Second Dist., Div. Two.   June 20, 1957.]

THE PEOPLE, Respondent, v. VINCENT STANLEY, Appellant.

Walter L. Gordon, Jr., and James L. Garcia for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Marvin J. Christiansen, Deputy Attorney General, for Respondent.

ASHBURN, J.—Defendant was convicted of violation of subdivision 3, section 337a, Penal Code, bookmaking.[1] Motion for new trial was denied, further proceedings suspended and probation granted.   Defendant appealed from ''the judgment.''   For purposes of appeal the order granting probation falls within that term.   (Pen. Code, § 1237, subd. 1.)   Defendant also appealed from the order denying a new trial.

The sole contention made by appellant's counsel is that the evidence is insufficient to establish a corpus delicti, in that there was no proof that horse races upon which defendant took bets were actually run.   Counsel say in their brief:

[1] Penal Code, section 337a: ''3. Every person, . . . Who . . . receives, holds, or forwards, or purports or pretends to receive, hold, or forward, in any manner whatsoever, any money, thing or consideration of value, . . . staked, pledged, bet or wagered, or to be staked, pledged, bet or wagered . . . upon the result, or purported result, of any trial, or purported trial, or contest, or purported contest, of skill, speed or power of endurance of man or beast, or between men, beasts, or mechanical apparatus, . . . ''Is punishable by imprisonment in the County jail or state prison for a period of not less than thirty days and not exceeding one year.''

"There is no evidence that any other horse was in the eighth (8th) race at Tropical Park, competing against 'Topside.' There is no evidence in the record that 'Wolf Junior' was a horse. · There is no evidence that 'Wolf Junior' was competing against anything. Therefore, the evidence is insufficient in this respect. . . . Again, there is no evidence in the record that 'Aces Count' was competing against any other beasts or horses.".

Defendant testified that he was engaged as a bookmaker prior to 1954, that he was then convicted of that offense and was on probation when the instant crime was committed. He admitted that he was then engaged in taking "layoff bets" from small bookmakers. "THE COURT: What difference does it make? He has already admitted that during that period he was operating as a bookmaker."

The evidence, viewed most favorably to respondents (*People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778]), shows the following. Police Officer James A. Branch, on January 16, 1956, visited a "cash room," a place for taking and relaying bets, located at 5750 Crenshaw Boulevard in the city of Los Angeles. It was the back room of a pretended television shop. As he stepped on a rubber mat at the front door a bell rang, a face appeared in a peep hole in a partition and he was admitted to the back room. There he saw the usual accouterments of a bookmaking activity, table, numerous chairs, telephone, scratch sheets, magic pad for recording bets, betting markers, and the like. On a prior occasion there had also been a radio giving results of races. Betters were identified by initials or numbers. Races were then being run at Santa Anita and Tropical Park race tracks. Defendant Stanley was present when Branch entered the cash room on that day. One Jesse Sanford, with whom Branch previously had bet, was not in sight, so he asked defendant whether he could place a bet with him. Receiving an affirmative answer he handed defendant $6.00 and bet $2.00 to win on a horse named "Topside" which was running in the eighth race at Tropical Park, $2.00 to win on "Wolf Junior," running in the ninth race at the same track; also a $2.00 parlay from Topside to Wolf Junior. Defendant took the bets and placed the money in his pocket. On the preceding Friday, the 13th, Branch had bet $2.00 with Sanford on "Aces Count" in the first race at Santa Anita. On this occasion, the 16th, he asked defendant to call his Vermont location and get an o.k. for payoff on that horse which had

18

won. Defendant did so and then paid Branch $6.10 on that winner. Someone asked defendant where his radio was and he said the cops had taken it and "I am lucky to even be in business." Topside won on the 16th and defendant later collected from Sanford $3.70 on that bet. The collection was made at defendant's cash room at 5103 South Vermont Street. After his arrest defendant told Officer Gough that he had two cash rooms operating, one "supposedly a swap shop; the one on Crenshaw was a television front." He later admitted having three such places and said "that he would close them all if we would allow him to stay at the one at Vermont as a home base." After his arrest he told Officer Gough, who had arrested one of his patrons and then had him in custody, "I'd rather you take one of my bookmakers than one of my betters because once you start booking the betters, they don't come back." Gough further testified: "I asked him how long he had been making book or taking action, and he stated that he had been on and off for three years, that prior to that time and during the time that he wasn't taking action on the horses that he was a golf player. . . . He asked if he could get the radio back from the arrest we made at 4519 South Western, . . . that he would like to get it back. He stated that he intended to make book as long as he could, that there was more money in it, and his bills were running pretty high." Prior thereto, on the 14th of January, when Gough had arrested one of defendant's bookmakers at the Crenshaw location, Stanley said: "Do you have to book the money? If you do, I can't pay my betters off."

The evidence leaves no room for doubt that the horse races in question were run on the days mentioned, that defendant took bets on them and paid off on the winners.

In support of the baseless claim that there was no evidence that the races actually were run, counsel rely upon the single case of *People* v. *Banks,* 39 Cal.App.2d 164 [102 P.2d 818], which makes no such holding and which has been repeatedly criticized by this court, also disapproved by the Supreme Court. ■ In *People* v. *Woods,* 35 Cal.2d 504, 509 [218 P.2d 981], it is said: "The offense charged in count one, the violation of subdivision 3 of section 337a, is committed when money is received as a wager on a race. (*People* v. *Hoffman,* 94 Cal. App.2d 379 [210 P.2d 885].) The testimony of Officer O'Keefe concerning the transaction between defendant and the newsboy, the piece of paper on which defendant recorded the bet, and defendant's admissions with respect to the

business in which he was engaged, are clearly sufficient to support the verdict of the jury that defendant was guilty of taking a wager on the outcome of a horse race. Defendant relies on *People* v. *Banks,* 39 Cal.App.2d 164 [102 P.2d 818], in which it was held that evidence somewhat similar to that in the present case was insufficient to support a conviction under subdivision 3. However, it appears, as stated in the case of *People* v. *Hoffman, supra,* at page 382, that in the Banks case 'the appellate court weighed the evidence and decided in accordance with the testimony of witnesses who were not believed by the trial court and contrary to the evidence that the court had accepted as true.' *People* v. *Banks, supra,* is disapproved insofar as it is in conflict with our holding that the evidence is sufficient to support the judgment as to count one.'' With reference to the Banks case, see also *People* v. *Hoffman,* 94 Cal.App.2d 379, 382 [210 P.2d 885]; *People* v. *Oliverio,* 99 Cal.App.2d 743, 745 [222 P. 2d 245]; *People* v. *Lopez,* 103 Cal.App.2d 291, 293 [229 P.2d 404]; *People* v. *Pollack,* 105 Cal.App.2d 581, 586 [234 P.2d 176]. Further to the effect that proof of the actual running of the race is unnecessary see *People* v. *Kelley,* 22 Cal.2d 169, 176 [137 P.2d 1]; *People* v. *Carroll,* 54 Cal.App. 684, 686 [202 P. 885]; *People* v. *Sutherland,* 59 Cal.App. 462, 463 [210 P. 965]; *People* v. *Larum,* 111 Cal.App.2d 732 [245 P.2d 323]. The reason is thus stated in *People* v. *Carroll, supra,* page 686: ''Defendant first contends that it was essential that the prosecution make proof that a race upon which the defendant sold pools and accepted bets had been actually run and that the evidence was insufficient to show that fact, and that the various documents introduced were incompetent for that purpose. The statute, in our opinion, does not require that the prosecution shall make proof that a race or contest upon which bets are taken or pools made shall be an actual one. The statute has been subjected to several amendments which have changed its original form and make inapplicable decisions rendered prior to the amendments. The words 'purported bet or bets' and 'purported trial or contest' have been carefully placed within each subdivision of the section. Those terms must be given the meaning which the words ordinarily imply, and it seems quite plain that the legislature intended that the offense as defined in the section should be complete whenever it was shown that a person engaged in any of the acts described, having reference to a race or contest, actual or pretended.''

20

This appeal is patently frivolous. Rule 13 of the Rules of Professional Conduct of the State Bar of California commands that an attorney shall not take or prosecute an appeal merely for delay, or for any other reason, except in good faith. (33 Cal.2d 30.) The conclusion is inescapable that the instant appeal could have been taken for no purpose other than that of delay.

The judgment (order granting probation) is affirmed. Order denying new trial is also affirmed.

Moore, P. J., and Fox, J., concurred.