[Civ. No. 16948. Second Dist., Div. Three. Nov. 16, 1949.]

DOROTHY M. GOLDRING, Respondent, v. JOHN E. GOLDRING, Appellant.

Saul J. Bernard for Appellant.

McLaughlin, McGinley & Hanson for Respondent.

SHINN, P. J.—Plaintiff obtained an interlocutory decree of divorce on October 8, 1947, on the ground of cruelty. The decree recites that by a stipulation entered into in open court, "plaintiff and defendant stipulated and agreed as to all matters embodied in this decree except the matter of whether or not plaintiff should obtain an interlocutory decree of divorce." Custody of the two minor children of the marriage was awarded jointly to the parties, with the plaintiff to have physical custody and control at all times except on alternate week ends and during two weeks of the summer vacation period. Plaintiff was awarded the home, subject to a trust deed in the sum of $6,630 which defendant was ordered to pay and discharge; most of the furnishings therein; certain other articles of furniture; a 1941 automobile; and an insurance policy on her life. It was decreed that, except for the foregoing specific properties awarded to her, in consideration of which plaintiff had released all claims to any other property, plaintiff had no right, title, or interest in any property or assets of defendant John E. Goldring, of Modernair Corporation, or of Modern Products, Ltd., a copartnership. Defendant was ordered to pay "to the plaintiff the sum of Two Hundred Forty-nine Dollars ($249.00) per month for the support and maintenance of the said two minor children . . . until further order of the court," and in addition thereto the sum of $1.00 per month as alimony for a period of three years or until plaintiff's remarriage. No appeal was taken from the judgment.

On August 13, 1948, following a hearing which lasted two days, a different judge from the one who presided at the divorce trial denied defendant's motion to modify the award of support money. Defendant appeals from the order, contending that denial of his application was an abuse of discretion. Respondent contends to the contrary, but concedes that; although the provision for support of the children was part of a property settlement agreement, the court had jurisdiction to modify it upon a proper showing of changed circumstances. In view of this concession and our conclusion that the order must in any event be affirmed, we find it unnecessary to determine whether, or to what extent, the court may have had such jurisdiction. (See *Streeter* v. *Streeter*, 67 Cal.App.2d 138, 142-44 [153 P.2d 441]. *Cf. Fields* v. *Fields*, 94 Cal.App.2d 56 [209 P.2d 977].)

Before passing to a consideration of the merits of the appeal we desire to issue a word of warning to attorneys. Unfortunately our remarks will probably miss the mark, since the practitioners we intend to reach are not those who make a practice of reading law.

It is incumbent upon the appellant to state fully, with transcript references, the evidence which is claimed to be insufficient to support the findings. The reports are replete with statements to the effect that the courts are not called upon to make an independent search of the record where the rule is ignored. We have such a situation here. The appellant's brief of seven and one-half pages devotes one and one-half pages to a statement of the evidence. It refers to the evidence most favorable to appellant, with proper transcript citations, but goes no further. No attempt whatever has been made to point out evidence tending to prove that a material change in defendant's financial condition had taken place after the decree was rendered. The general statement of the evidence given at the hearing is inaccurate, incomplete and misleading. It was not incumbent upon plaintiff to supply the deficiencies and she has not done so. Nevertheless we have seen fit to make a thorough study of the transcript of the evidence instead of affirming the order summarily. This because we have not heretofore announced an intention to adhere to the rule above stated. But we do now give notice that henceforth it will be the practice of this court to disregard claims of insufficiency of the evidence even though that be the only ground of appeal, where the appellant has failed to make a satisfactory statement in the opening brief, or a supplement thereto, of the evidence claimed to be insufficient, with transcript references. Counsel who ignore the rule may expect affirmance of the judgement or order appealed from in proper cases.

The only evidence pertaining to the status of defendant's finances consists of his own testimony and that of his business associate, C. S. Vaughn, plus certain documentary exhibits. As disclosed by that evidence, assuming it worthy of full credibility, we think the following is a fair statement of his finances at the time of the decree. He was the principal stockholder and an officer of Modernair Corporation, and entitled to a salary of $200 per month. The salary was not paid to him consistently, however. He had some additional income from securities, most of which was required to pay the interest on loans for which, as hereafter appears, such securities were pledged

as collateral. On October 6, 1947, his checking account showed a favorable balance of $525.25, and his savings account $30.37. By the decree, defendant was awarded the sole ownership of the assets of Modern Products, Ltd., a partnership formerly composed of him and his wife. Prior to the divorce trial, these entire assets had been sold to Modernair for a price of about $37,000, some $16,500 of which was paid in cash to liquidate all of Modern Products' debts except an indebtness of $1,900 which was assumed by defendant. At the time of the stipulation, the balance of $20,496.93 due on the purchase price was still owing to Modern Products Ltd. (i.e., to defendant) from Modernair. Between October 1946 and September 1947, entirely apart from the Modern Products purchase, defendant had invested in Modernair Corporation about $74,000, much of which had been raised by secured loans: $16,500 had been borrowed from the Bank of America, $21,000 from the Canadian Bank of Commerce in San Francisco, and $10,000 from his sister, Mrs. Natcher. Defendant had been issued 950½ out of a total of 1978 outstanding shares of Modernair stock of $50 par value, and a receipt for $26,875 authorizing the issuance to him of 537½ additional shares as soon as a permit therefor was received from the Corporation Commissioner. The only other shareholders were C. S. Vaughn (597½ shares) and defendant's mother (430 shares). Defendant about the time of the divorce trial, borrowed $10,000 from Vaughn, upon the security of certain bonds, which sum he invested in stock of the Vaughn Manufacturing Company. On October 6, 1947, in order to pay attorney's fees, costs, and sums awarded by the decree, he borrowed $10,000 from the Canadian Bank of Commerce in Los Angeles, secured in part by stocks owned by him, and in part by certain securities which he borrowed from his mother, in return for which he later pledged with her his newly acquired Vaughn stock. As a term of the property settlement agreement, defendant assumed a $3,500 debt owing from plaintiff to defendant's mother, and as security therefor pledged some 413 shares of his Modernair stock. The rest of his issued Modernair stock had already been pledged as collateral for the loan from his sister. The only unencumbered securities which he then held were certain shares in Celanese Corporation of Canada worth about $1,250. As previously noted, he was obligated by the stipulation and decree to make the monthly payments necessary to discharge the trust deed on the home.

At the time of the hearing below, in August, 1948, the status

of defendant's finances may be summarized as follows. He was still entitled to the salary of $200 per month from Modernair, but had not been paid for some six months. His other income was negligible. His savings account showed a balance of $.12 as of March 22, 1948, and his checking account had been closed out on March 25, 1948. He had not paid anything on the $1,900 indebtedness of Modern Products, Ltd., nor had Modernair paid him any part of the $20,496.93 which it owed on the purchase price of Modern Products' assets. The $16,500 Bank of America loan had been discharged by sale of the collateral as had the $21,000 loan from the San Francisco branch of the Canadian Bank of Commerce, and the $10,000 loan from C. S. Vaughn. He still owed $9,000 to Mrs. Natcher, $9,500 to the Los Angeles branch of the Canadian Bank of Commerce, some $6,100 upon the trust deed, and the full $3,500 debt to his mother which he had assumed. His Celanese stock had been pledged with his mother as additional security for the last mentioned obligation in June, 1948, and he no longer owned any unencumbered stocks or bonds. He testified to a debt of some $600 owing on a note which he had executed to his mother for cost of room and board while living with her subsequent to September, 1946. The evidence does not disclose whether this note was executed prior to the divorce trial or not, nor what proportion of the $600 was allocable to costs incurred prior and subsequent thereto. He also owed an unspecified amount for medical services incurred in a recent illness, part of the total expenses of which had been met by hospital insurance proceeds. Finally, although he listed as a liability an annual premium due on life insurance in the amount of $696.60, he testified that he had made arrangements in May, 1948, to have the loan value of the policy pay the premium rather than have the policy lapse.

From defendant's evidence it would appear that the chief changes in his circumstances since the time of the decree consisted of: (1) the complete cessation of the theretofore irregular payments of salary; (2) the elimination of three major items of liability, with an accompanying reduction in total assets, by the sale of collateral securing the said three loans; (3) the partial reduction of certain other liabilities; (4) the exhaustion of his bank accounts and hypothecation of his last remaining unencumbered securities; and (5) the incurring of an undisclosed, but presumably not very large amount of additional indebtedness.

Defendant contends that upon this showing, he was entitled to a modification of the decree as a matter of law. He assumes that the court was required to believe his testimony and that of his only other witness, Vaughn. He ignores the rule that the credibility of witnesses, the weight to be accorded to their testimony, and the inferences to be derived therefrom, are matters for the trial court. The mere fact that much of defendant's testimony was not directly contradicted or impeached did not require the court to give it full credit. An examination of defendant's testimony discloses that it is highly unsatisfactory, and is beset with inconsistencies, vagueness, and ambiguity. On the whole, it presents serious questions of fact as to the actual nature and extent of defendant's assets, and as to his good faith in their management. A few examples will suffice to illustrate the point: (1) Although defendant testified that he was receiving no salary and little other income, his personal living expenses amounted to more than $180 per month, including a $75 per month apartment. Moreover, he stated that he was willing to pay $100 per month for support of his children, and that he would keep up the payments on the home; (2) in June, 1948, purportedly at the request of his mother, defendant pledged with her his 50 unencumbered shares in Celanese Corporation of Canada, as additional security for his debt to her of $3,500. This debt was already secured by 413 shares of Modernair stock for which defendant had paid a total price of $20,650, and which had a book value, as of May 15, 1948, of over $11,000, according to Modernair's balance sheet; (3) defendant testified that at the time the decree was rendered, Modernair was only "in a little more favorable position than it is at the present"; and that its net worth in May, 1948, was about $95,000. Examination of Modernair's balance sheet in evidence discloses that as of May 15, 1948, it had total assets of $150,000. Its current assets consisted of cash in the amount of $4,000, notes and accounts receivable totaling some $29,000, and a merchandise inventory of over $49,000; whereas its current liabilities to persons other than defendant and Vaughn, who were also its chief stockholders, totaled less than $23,000; (4) although defendant testified that bonds of a face value of $19,000 pledged with the Bank of America had been sold to discharge the $16,500 loan, there was no evidence as to what the unpaid balance was at the time of sale, nor what the proceeds of sale amounted to; and defendant merely produced a sales slip of a private broker evidencing sale of only $2,000 worth of said bonds at about the time of

the purported sale of collateral; (5) defendant was unable to account for certain deposits to his credit appearing upon his bank's ledger sheets, totaling over $3,000, in January, 1948; (6) defendant was in possession of a receipt for advances totaling $26,875 to Modernair, for which 537½ shares of stock were authorized to be issued to him as soon as a permit to do so was received from the Corporation Commissioner. The receipt was dated March 12, 1947. As of the hearing in August, 1948, the shares had not been issued, and the delay is not explained in the record. Furthermore, Modernair's balance sheet listed only $22,742.64 as the total of "advances by officers and stockholders." A substantial part of this sum had been advanced by C. S. Vaughn, according to his testimony.

The foregoing is not intended to be, nor is it, a complete statement of the questionable aspects of defendant's testimony. Many other dubious features of a similar nature abound throughout. It was, of course, within the power of the court to find the facts as they were represented by defendant, and to resolve all doubts in his favor. But it was not bound to do so as a matter of law. To reach a contrary decision would require this court to exceed its lawful jurisdiction by retrying the case on its facts.

█ Defendant's claim of inability to comply with the terms of the decree would seem to have substantial support in his testimony and that of Vaughn that the business of Modernair has fallen off materially and that it has been operating at a loss. Granting that this is true it nevertheless appears that it is a meritorious business, and that the conditions from which it has suffered, including strikes against suppliers of material, need not necessarily recur. The court is not required to modify an order for support of children with every temporary change in the father's financial condition.

We deem it appropriate, also, to point out that defendant, as part of the property settlement contract, *agreed* to the payments as ordered by the decree, at a time when his ability to meet them might well have been seriously questioned. Although a father's inability to make support payments is a factor normally to be considered (*Lufkin* v. *Lufkin*, 209 Cal. 710, 716-717 [290 P. 8]), it was by no means a controlling issue in the present proceeding. In view of the fact that the original award was based upon defendant's voluntary agreement, it would seem to follow that the court was not required

to modify it except upon a showing that defendant's ability to comply therewith had substantially decreased relative to the time of the decree. To hold otherwise would unwarrantedly deprive plaintiff of the fruits of her bargain, and open the door to fraud. The power to modify orders regarding support of minor children of divorced parents is one of broad discretion and is peculiarly dependent upon circumstances. It cannot be deemed an abuse of discretion to deny modification in the absence of an acceptable showing that the circumstances of the parties have materially changed from what they were when the prior order was made. (See *Williams* v. *Williams*, 80 Cal.App.2d 28 [181 P.2d 110]; *Gavel* v. *Gavel*, 123 Cal.App. 589 [11 P.2d 654].)

Furthermore, we think it of little significance, in view of the rather unusual circumstances of the case, that since the original decree was entered, plaintiff had found employment and at the time of the hearing was receiving an income of $232 per month. The decree awarded her $249 per month for support of the children, but only $1.00 per month for alimony for a limited period. Clearly it was contemplated that plaintiff, who received no income producing property whatsoever by the decree, would become employed. That being an implied condition of the award, its fulfillment will not be readily construed to plaintiff's disadvantage. Moreover, there was evidence from which it could be inferred that plaintiff's living expenses had substantially increased and that a reduction in the amount of the support payments would be detrimental to the welfare of the children. We are satisfied that the denial of defendant's petition for modification was not an abuse of discretion.

The portion of the order from which the appeal is taken is affirmed.

Wood, J., and Vallée, J., concurred.