[Crim. No. 5410.   Second Dist., Div. One.   Oct. 31, 1955.]

THE PEOPLE, Respondent, v. KARL R. JOHNSON, Appellant.

666

William J. F. Brown for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

WHITE, P. J.—In an information filed by the district attorney of Los Angeles County, defendant was charged with grand theft of $1,200 from Jesse Gartmon and with having been previously convicted of the crime of grand theft. Following entry of a plea of not guilty and denial of the prior conviction, the cause proceeded to trial before the court sitting without a jury. By stipulation the cause was submitted upon the testimony adduced at the preliminary examination with the reservation that additional evidence might be submitted. At the commencement of the trial defendant admitted the prior conviction. He was found guilty, his motion for a new trial was denied and he was sentenced to state prison. From the judgment and the order denying his motion for a new trial defendant prosecutes this appeal.

The complaining witness Jesse Gartmon met a man called "Red" at the stockyards in Vernon, county of Los Angeles, when the latter introduced himself. During the ensuing few

weeks Gartmon assisted "Red" in transporting livestock to various places.

On June 17, 1954, the complainant was at the stockyards as were "Red" and a man with a Jamaican accent. The Jamaican said that he had given a woman $50 and she had gone to the whiskey store but had not returned. He asked Mr. Gartmon and "Red" if they would show him how to have some fun with girls, and said that he had plenty of money. There was some conversation about a car, and "Red" said that he had one. The man with the Jamaican accent promised them some money if they took him somewhere where he could have some fun.

The man with the Jamaican accent said that he had three or four thousand dollars "on him" and had a good bit of money on his ship, which money his captain was keeping for him. He said that the captain wanted to take about 25 cents on the dollar. The defendant, who had joined them, said, "That's too much," and asked him why he didn't put his money in the bank. The man with the Jamaican accent said, "You mean to tell me I can put my money in the bank and draw it out when I get ready?" The defendant said, "Sure, you can."

It was suggested that the man with the Jamaican accent let Mr. Gartmon put his money in the bank, but Mr. Gartmon said that the Jamaican could put his own money in and get it out. After some more conversation the defendant said, "Fellow, you better give it to him or give it to some of the guys to keep it for you because then it will be safe, because wherever you are going to have fun you might have it all taken away."

The defendant opened his billfold and said, "Probably some of you guys got a bank account or something like that. They are honest fellows."

Mr. Gartmon opened his billfold and said that he had a dollar or two. "Red" said, "Well, I have a bank account but I can't draw no money, nothing like that, out of the bank, because my wife is in Alaska and I couldn't draw it without her." He suggested that Mr. Gartmon show him his bankbook. Mr. Gartmon said, "I have a bank book. I have a little money in the bank." The Jamaican said, "Well, I bet you don't have no money in the bank. You can't draw no money out of the bank. I bet you $750.00."

Mr. Gartmon said, "No, I wouldn't go through drawing it out."

"Red" said, "Go ahead, draw it out. What have you got to lose? The guy has plenty of money. If you take yours out and show it to him, you can put it right back."

The defendant, the Jamaican, "Red" and Mr. Gartmon got into a car and went to the latter's home, where he got his bankbook. The defendant took the bankbook and said, "Here, you got $1,200 in the bank."

He said, "Well, now, in my country that's a ration book. Do you mean to tell me the white people in this country allow negroes to have that kind of money? I don't believe he can draw it out." Then he said, "Well, if he can draw it out, so I will give him $750.00. I've got plenty of money." He added, "Well, negroes in this country don't even have a flag."

They went to the California Bank at 57th and Central, where Mr. Gartmon had a savings account. Mr. Gartmon and "Red" entered the bank and Mr. Gartmon drew out $1,100, taking it in the form of a cashier's check. Then they went to the Bank of America at 47th and Broadway, where Mr. Gartmon cashed the check, receiving therefor hundred dollar bills, which he added to a hundred dollars which he had in his pocket.

Mr. Gartmon showed the money to the Jamaican, who said, "Well, you can't keep that money because you have got to take it back to the bank. The people won't trust you in this country with that kind of money." He continued, "You don't even have a flag. They don't allow Negro people to have that kind of money in this country."

Mr. Gartmon said, "This is mine. I don't want to fool around with the fellow. If he doesn't want to give me the $700, let's forget about it." Someone suggested that they ride, and they went to the west side. The defendant said that he had to make a telephone call to let them know he wouldn't be at work that day, and he and "Red" got out of the car and left Mr. Gartmon with the Jamaican. They returned in 15 or 20 minutes, and when they did, the defendant had a paper bag in his hand. The defendant said, "Well, look, I'm going to take this guy where he can have some fun. You have got too much money to take with you. Why don't you put all your money in this paper bag and give it to that fellow to keep?"

The Jamaican said, "O.K." and unbuttoned his belt, saying that he had a money belt. The defendant said, "Don't take your clothes off here in the car. Let's go in the men's room." They got out and went to the filling station. When they re-

turned, the Jamaican had a paper bag about a foot high. The defendant said, ''Well, here it is——.''

They got into the car and the defendant said. ''Let me see it. Look here, all the money here.'' Mr. Gartmon looked in the bag and it appeared to have a lot of money in it. It was suggested that Mr. Gartmon keep the money, and he refused. The defendant suggested that Mr. Gartmon put his money in the sack, and that he could keep it. Mr. Gartmon had his money in his hand, but didn't know whether to put it in or not. The defendant pulled it out of his hand and put it in the bag. Mr. Gartmon asked for his money, and he said, ''No. Here, you keep it.'' The Jamaican said, ''I will show you how to keep it.'' He pulled his coat off, put it on his arm and said, ''You keep it like this.'' He handed it to Mr. Gartmon and said, ''Wait, put it on under your arm. Under your shirt. Put it like this.'' Mr. Gartmon asked to see in the bag and when he looked in the money was there. The defendant said, ''Well, let me keep it.'' ''Red'' said, ''I am going to move out, because the police might come.'' Mr. Gartmon said, ''I haven't done nothing. This is my money.'' The defendant said, ''Yes, but they might think these guys are trying to start some stuff like a fight, you guys talking so loud.''

The defendant held the bag on the way back to Los Angeles, and Mr. Gartmon told ''Red,'' who was driving, to take the money back before the bank closed.

''Red'' said, ''Look out, police.'' Mr. Gartmon looked back, and when he turned around again the Jamaican had what looked like the bag. The Jamaican said, ''I'm going to let you keep it. Put it in the glove compartment and lock it up.'' ''Red'' opened the glove compartment and said that he would keep it and it would be safe in the glove compartment. The Jamaican put the bag in the glove compartment. ''Red'' took the key off the key ring and locked it.

The defendant said, ''I'm going along with him. We will be back in a few minutes.'' ''Red'' stopped the car at Sixth and Los Angeles. The defendant and the Jamaican got out. The former whispered something to ''Red'' and dropped something by ''Red.'' Mr. Gartmon asked if it was the key and ''Red'' said that it was. ''Red'' started the car, and when they had gone about a block Mr. Gartmon opened the glove compartment, took out the bag, and opened it. In it there was a lot of tissue paper, eleven one dollar bills and three five dollar bills. He told ''Red'' to turn around quickly.

The latter drove around for several blocks, saying that the streets were all one-way streets, and when they got to Sixth and Los Angeles again, Mr. Gartmon got out, looked around, but didn't see anybody that looked like the men.

Police Officer Burkland and Narcotic Inspector King arrested the defendant on July 9, 1954. Officer Burkland told him that the sheriff's office had a "want" on him for a bunco deal. While Officer Burkland was talking to the defendant, the latter's father entered the room. The father said, "Well, what's the matter?" The defendant answered, "Well, it's about the job down at Vernon where we took that sucker for eight bills."

As a witness in his own behalf, defendant testified that on the day here in question he met the complaining witness and three or four other men at the stockyards. He knew the other men as "Red," "Big Boy," and "Chink." That this group were talking about girls and gambling. That the complaining witness and one of the other men engaged in a discussion as to who could put his hands on the most money and who was the best gambler. Defendant then narrated how the group engaged in a gambling game. That the complaining witness lost all his money and asked to be taken home to get his bankbook. That he was taken home, obtained the bankbook, was driven to the bank, made a withdrawal, and returned with $400 in his hand. The gambling game was resumed and again the complaining witness lost his money. That an argument ensued and defendant walked away. That the complaining witness, "Red" and "Chink" got into an automobile and drove away without defendant accompanying them. The latter further testified that it was the last time he saw the complainant until four days prior to the former's arrest. Defendant further testified that while the gambling was in progress, the complaining witness gave "Big Boy" a check for $1,200 and said he would make it good. That at no time was anybody known as "the Jamaican" in the automobile. Defendant also testified that at no time while he was present was any money placed in a paper bag.

Appellant's first contention seems to be that the court erred in failing to find as true, the facts which were consistent with his innocence and inconsistent with his guilt. Appellant's statement of the evidence is inaccurate and incomplete. As an instance thereof, there is no mention in appellant's brief of the evidence showing that after the complaining witness withdrew the money from the bank defendant took it

from the former's hand, placed it in a paper sack, and put the sack into the glove compartment of the auto. Only the first point urged by appellant is supported by anything resembling argument. The remaining three grounds urged for reversal contain only an assertion of error and citation of cases without any indication as to how such cases support the claimed error. Although it was not incumbent upon the attorney general to supply the deficiencies he has, in the interest of justice and to aid this court, done so. Counsel should at all times be mindful of the provisions of rule 18 of Rules on Appeal and keep in mind the warning given by the court in *Goldring* v. *Goldring*, 94 Cal.App.2d 643, 645 [211 P.2d 342]. While we might very well pass the claims made by appellant without consideration, nevertheless, with the aid rendered by the attorney general we have seen fit to make a thorough study of the evidence instead of affirming the judgment summarily, in the hope that in the future when insufficiency of the evidence is relied upon for a reversal, counsel will not fail to make a satisfactory statement in the opening brief, or a supplement thereto, of the evidence claimed to be "insufficient" with transcript references.

■ With reference to the aforesaid first claim of appellant that the trial court was bound to accept as true evidence consistent with innocence and to disregard evidence inconsistent therewith, it has long been the rule in this state that when two inferences reasonably may be drawn from the evidence, one pointing to innocence of the accused and the other to his guilt, that pointing to innocence is a rule for the guidance of the duly constituted arbiter of the facts. ■ On appeal, the court is bound by the findings of the trial court, if there is substantial evidence, contradicted or uncontradicted, to support the conclusion arrived at in the court below. ■ Reviewing judges are, obviously, in no position to determine the credit which should be accorded to witnesses or to weigh their testimony. As has often been repeated, it is for this reason that our Constitution provides that the appellate courts are not authorized to review evidence, except where, on its face, it may justly be held that it is insufficient to support the ultimate issue involved, in which case it is not a review of a question of fact, but purely one of law. In consonance with the spirit and intent of this constitutional provision, the Legislature has ordained that the jury are the exclusive judges of the credibility of witnesses (Code Civ. Proc., § 1847), and are the judges of the effect and value of

evidence addressed to them, except in those instances where it is declared by the law that it shall be conclusive proof of the fact to which it relates. (Code Civ. Proc., § 2061.)

And as a necessary corollary of the rules above noted, the trial judge in the case at bar was authorized, if he conscientiously felt warranted in so doing, after full and fair consideration thereof, to disbelieve the testimony of appellant and accept that of witnesses for the prosecution as to what occurred during the transactions here under consideration (*People* v. *Newland*, 15 Cal.2d 678, 684 [104 P.2d 778]; *People* v. *Crawford*, 41 Cal.App.2d 198, 205 [106 P.2d 219]; *People* v. *Rubio*, 75 Cal.App.2d 697, 707 [171 P.2d 737]; *People* v. *Stanhope*, 37 Cal.App.2d 631, 634, 635 [99 P.2d 1075]).

Appellant next insists that ''There was no showing that Mr. Gartmon parted with any money on any false pretense made to him by the defendant and he is entitled to benefit of the presumption of innocence and reasonable doubt.'' Since the 1927 amendment to section 484 of the Penal Code, an accused may be convicted of grand theft upon proof showing larceny, larceny by trick and device, and embezzlement, as well as theft by false pretenses (*People* v. *Cannon*, 77 Cal.App.2d 678, 688-689 [176 P.2d 409]; *People* v. *Frazier*, 88 Cal.App.2d 99, 102 [198 P.2d 325]; *People* v. *Fewkes*, 214 Cal. 142, 149 [4 P.2d 538]). Since the finding of guilt may be sustained on the theory of larceny, it was not necessary that the complainant be shown to have parted with his money in reliance upon false pretenses (*People* v. *Gerundo*, 112 Cal.App.2d 797, 803, 804 [247 P.2d 374]).

Appellant's next complaint is that there was no reasonable or probable cause shown at the preliminary examination to hold him to answer. This objection may be raised only by a motion to set aside the information in accordance with section 995 of the Penal Code. Having failed to make such a motion, appellant's contention is unavailing (*People* v. *Parry*, 105 Cal.App.2d 319, 322 [232 P.2d 899]).

It would serve no useful purpose to here set forth the evidence above narrated. Suffice it to say that it shows clearly and convincingly that the money was taken from the complaining witness by appellant with intent to deprive him of it wholly and permanently (*People* v. *Darnell*, 97 Cal.App.2d 630 [218 P.2d 172]).

The evidence establishes the existence of the four elements necessary to constitute theft by larceny, viz. (1) a

taking of the thing which is the subject of the crime from the owner into the possession of the thief, without the consent of the owner; (2) asportation of the thing which is the subject matter of the offense; (3) the thing which is taken and carried away must be the property of another; and (4) the taking and carrying away must be with an intent, without claim or pretense of right or justification, to deprive the owner of his property wholly and permanently. (*People* v. *Edwards,* 72 Cal.App. 102, 112-116 [236 P. 944]; *People* v. *Cannon,* 77 Cal.App.2d 678, 692 [176 P.2d 409].)

The judgment and the order denying defendant's motion for a new trial are, and each is affirmed.

Doran, J., and Drapeau, J., concurred.