[Crim. No. 7061.    Second Dist., Div. Three.    Dec. 30, 1960.]

THE PEOPLE, Respondent, v. ELIJAH NEWMAN,
Appellant.

Matthews & Stanley and Al Matthews for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

FORD, J.—The information filed against the appellant contained three counts, each charging him with a violation of a particular subdivision of section 337a of the Penal Code. In a nonjury trial, he was found guilty as to the third count which related to subdivision 3.[1] Counts 1 and 2, relating respectively to subdivisions 1 and 2, were dismissed. The appeal is from the judgment.

After there had been a waiver of trial by jury, it was stipulated that the People's case in chief would be submitted on the transcript of the evidence received at the preliminary examination, it being specifically stated that any exhibits introduced and received at the preliminary hearing should be deemed "as accepted" for the purpose of the trial. It was further stipulated that the testimony of the defendant given at the preliminary hearing should be considered by the court and given the same force and effect as if the defendant had so testified at the trial. No other evidence was offered by either the People or the defendant. A summary of the evidence so presented to the trial court will be set forth herein.

George Renty, a police officer for the city of Los Angeles, testified that on March 28, 1959, at about 2:35 p. m. he saw the appellant in an empty room at 2131 West Temple Street in that city. The appellant, who was behind a counter, stated to the witness, "The horses are running. Why don't you pick one?" The witness replied that he was just out of the Army, that he was not too familiar with the horses, and that he would appreciate it if the appellant would pick a winner for him. The appellant then said, "There is no such thing as a cinch. But a guy just bet $64.00 to win on Bayshores in the 4th." He handed the officer a copy of the National Daily Reporter,

---

[1]Section 337a of the Penal Code is, in part, as follows: "Every person, . . . 3. Who, whether for gain, hire, reward, or gratuitously, or otherwise, receives, holds, or forwards, or purports or pretends to receive, hold, or forward, in any manner whatsoever, any money, thing or consideration of value, or the equivalent or memorandum thereof, staked, pledged, bet or wagered, or to be staked, pledged, bet or wagered, or offered for the purpose of being staked, pledged, bet or wagered, upon the result, or purported result, of any trial, or purported trial, or contest, or purported contest, of skill, speed or power of endurance of man or beast, or between men, beasts, or mechanical apparatus, or upon the result, or purported result, of any lot, chance, casualty, unknown or contingent event whatsoever; . . . [i]s punishable by imprisonment in the county jail or state prison. . . ."

which was in front of him on the counter, and said, "Pick one." The telephone rang while the officer was looking at the paper and the appellant had a conversation relating to horses and tracks. When the telephone call ended, the officer said to the appellant, "Give me $5.00 to win on Bayshores in the 4th at Tanforan." The appellant took the officer's money in the amount of $5.00, put it into his pocket, and asked the officer for the first three numbers of his home telephone. The officer said that such numbers were 9, 1 and 6. The numbers were then written down by the appellant. After a few minutes, the appellant placed a dime in the telephone on the wall, dialed a number, and spoke into the telephone, saying, "916 wants five to win on Bayshores in the 4th at Tanforan." The officer then left the room and gave a signal to other officers who thereupon entered the room and placed the appellant under arrest. Officer Renty further testified that he obtained the information relating to his bet from the copy of the National Daily Reporter which the appellant handed to him. That particular copy was received in evidence as Exhibit 1.

On cross-examination, Officer Renty said that no persons other than the appellant and a carpenter were in the room when the officer entered. He denied that the appellant said he was going to bet on the horse himself. He further denied that he suggested to the appellant that he "would just as soon put $5.00 on it with him." The officer was there approximately 15 to 20 minutes. There were no telephone calls other than the ones as to which the witness had testified. Rather than the place being an empty store building, it was a building in the process of being remodeled and painted. While he was there the officer drank some beer which he had purchased next door. He heard a radio there but did not recall "whether it was turned to horses."

C. A. Leslie, a police officer for the city of Los Angeles, testified that at approximately 2:15 p. m. Officer Renty entered the building at 2131 Temple Street and came out at about "2:30 to 2:35 p. m." Pursuant to a prearranged signal, the officers went to the location and arrested the appellant. The witness took possession of objects which were in the room. He described them as follows: "There were two racing forms, one National Daily Reporter, and in the rear of the building there were some 5-10 Caliente betting markers. I believe there were 29 of them. There were some selection sheets for 5-10 Caliente racing for Saturday and Sunday, which would be March the 27th and 28th." Exhibit 1, a copy of the National

Daily Reporter, was one of the items he found on the premises. The other objects taken by the officer were received in evidence as Exhibit 2. In addition, the officer took from the appellant $106, which was in ten-, five-, and one-dollar bills. The money was received in evidence as Exhibit 3. The witness had been on the vice squad since the preceding November and had investigated approximately 10 to 12 bookmaking cases. He was familiar with the paraphernalia normally used in bookmaking activities in the Los Angeles area in March 1959. Exhibits 1 and 2 constituted bookmaking paraphernalia. At the time of the arrest, the appellant was questioned about the markings on the side of the sheet (Exhibit 1) with respect "to each track, Tanforan, Jamaica, Gulf Stream." He stated that that was his record as to how the horses came in, that is, "first, second and third."

On cross-examination, Officer Leslie testified that the sheets having the wording "5-10 Caliente betting" constituted material that is given to persons "down in Caliente for playing the 5-10," Caliente being the only place where that could be played. The selection sheets related to "entries for Caliente." The officer did not know whether it was a fact that "there can be no 5-10 betting at any bookmaker's." He had "never seen 5-10 Caliente betting markers before." After the arrest, the appellant said, "I don't book any horses. I'm just a better. I work here as a janitor. The name of my boss is Thompson. I don't know his first name. He has 28 guys working for him."

No objection was made by counsel for the appellant when the exhibits were offered in evidence at the close of the People's case before the magistrate.

On his own behalf, the appellant testified that when he returned from obtaining his lunch the officer was there with the carpenter and was drinking beer. The telephone rang and the appellant answered it. The person calling informed him that "there was a hot horse that people were betting, and his name was Bayshores; somebody had bet sixty-five, thirty and forty on the horse; if I cared to get anything on him and see if I could bet him." After the call, the appellant told the carpenter about the conversation and said, "Let's you and I put him five across." The carpenter said he could not afford it but the appellant said he would "put it on for him anyway" and would deduct it out of his pay. The carpenter said that he did not desire to bet. In the meantime, "this fellow [Officer Renty] spoke up and says, 'I can't put $65.00 on him, but I'll put five with you on the horse.'" The appellant replied,

"Let's bet him five and five, then." The officer said, "Okay." So the appellant dialed "the number," and placed the bet, saying, "We want to put him five to win and five to place." The appellant further testified that three or four minutes later the telephone rang and "they called me back and he says, 'What name shall I put it in?'" The appellant's initials were used. The appellant then proceeded to eat his lunch. The officer placed a five-dollar bill next to his plate and departed. The appellant put the money in his pocket when the officers entered and told him to go over in the corner. When the other officers asked Officer Renty the name of the horse on which he bet, Officer Renty said, "It's a strange thing here . . . I didn't bet a horse." The officer further said that "we bet together" but that he did not know the name of the horse.

The trial judge, in the performance of his function of determining the credibility of the witnesses, was free to disbelieve the testimony of the appellant and accept that of the witnesses for the prosecution as to what occurred during the transaction herein involved, if he conscientiously felt warranted in so doing after a full and fair consideration of the testimony. (*People* v. *Johnson,* 136 Cal.App.2d 665, 672 [289 P.2d 90].) The evidence was sufficient to sustain the conviction of violation of section 337a, subdivision 3, of the Penal Code which makes it an offense to receive, hold or forward money bet on the result of a horse race. The trier of fact was justified in reaching the conclusion that the appellant received money from Officer Renty as a wager upon the outcome of a horse race. (*Cf. People* v. *Cuda,* 178 Cal.App.2d 397, 414 [3 Cal.Rptr. 86] ; *People* v. *Stanley,* 152 Cal.App.2d 16, 18-19 [312 P.2d 752] ; *People* v. *Larum,* 111 Cal.App.2d 732 [245 P.2d 323].) Consequently the judgment must be affirmed unless there is merit in the sole contention of the appellant on this appeal, a matter to which we now turn.

The appellant asserts that "the introduction of a portion of Exhibit No. 1, and all of Exhibit[s] No[s.] 2 and 3 was prejudicial to the rights of the Appellant and unduly influenced the Court." But such contention is without merit. The appellant presented no objection in the trial court to the introduction in evidence of the exhibits or any portion thereof.[2] Therefore, he may not for the first time on appeal urge that it was error to have received such evidence. (*People* v. *Turville,* 51 Cal.2d 620, 635 [335 P.2d 678] ; *People* v. *Thorne,*

[2]Nor, as heretofore noted, had any objection been made at the preliminary examination.

166 Cal.App.2d 668, 670 [333 P.2d 394]; *People* v. *Jackson,* 163 Cal.App.2d 355, 359 [329 P.2d 329]; *People* v. *Kozakis,* 102 Cal.App.2d 662, 665 [228 P.2d 58].)

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.